COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JOSE ANGEL MARTINEZ, | § | No. 08-11-00314-CR |
| Appellant, | § | Appeal from |
| v. | § | 432nd District Court |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC # 1184978D) |

## O P I N I O N

Jose Angel Martinez is appealing two convictions of possession of cocaine with intent to deliver (Counts I and II). A jury found Appellant guilty of both counts, found that he used or exhibited a deadly weapon during the commission of the offense, and assessed his punishment at imprisonment for a term of ninety-nine years on each count. We affirm.

### FACTUAL SUMMARY

On December 28, 2009, Officer Jesus Alaniz of the Fort Worth Police Department's Gang Enforcement Unit was patrolling Weber Street in a marked police vehicle at around 11 p.m. After several young men standing in the front yard of a house on Weber Street made eye contact with Officer Alaniz, he became suspicious and ran a computer check on the house in the police gang database. The computer identified the house as one frequented by members of the Varrio North Side and Varrio Diamond Hill street gangs. Based on the hit, Officer Alaniz requested that an unmarked unit conduct surveillance on the house, and Officer Ryan Perales

responded to that request. Perales subsequently notified Officer Alaniz and other officers that he was following a vehicle which had left the house and the driver had failed to signal a left-hand turn onto Decatur Avenue. Officer Alaniz subsequently stopped the vehicle for the traffic violation observed by Officer Perales.

Michelle Becerra testified that on that evening, Appellant was helping her and her family move into a house on Weber Street. At some point, Becerra and Appellant left the house in separate cars, with Becerra driving in front and Appellant driving a Dodge Charger registered to his then-girlfriend and Becerra's sister-in-law, Nicole Lopez. Becerra disputed Officer Perales' account of events and testified that she had seen Appellant use his turn signal in turning left on Decatur Street because Appellant had been tailgating her, which led her to check her mirrors and watch him make the turn. She further testified that Officer Perales pulled her over shortly after she and Appellant went in different directions on 23rd Street, informed her that he stopped her for failing to use a turn signal, and then asked her where her "friend" was. Becerra also said she knew Officer Perales personally, that they had gone to school together, and that he had acknowledged her at several social events. Officer Perales denied knowing Becerra personally or having pulled her over that night. On cross-examination, Becerra admitted that her sons had previous run-ins with the police and were associated with the Varrio North Side gang, but denied that those facts would bias her testimony.

Based on these facts, Appellant moved both before and during trial to suppress all evidence obtained from Officer Alaniz's traffic stop, arguing that Becerra's testimony proved that Appellant did not commit a traffic offense and that Officer Alaniz's stop was pretextual and unsupported by probable cause. Appellant also introduced evidence that he did not have exclusive control over the vehicle, that several of Lopez's ex-boyfriends and others who had

"ties to the drug world" had previously used the Charger in the months between September 2009 and December 2009, and that a stereo behind which drugs were found had been broken by Lopez's ex-boyfriend and fixed before Appellant came into possession of the car. The trial court deferred ruling on the motion to suppress until trial, but ultimately denied it, finding that Becerra's testimony about seeing Appellant signal a traffic turn was not credible because her sons were associated with the same street gang as Appellant.

Officer Alaniz testified that during the stop, he asked for and received Appellant's verbal consent to search the vehicle. Officer Alaniz also testified that Appellant admitting to possessing a small amount of marijuana. Sgt. Enright seized a bag containing marijuana in plain view in the driver's side door pocket, then placed Appellant under arrest for possession of marijuana. During the search incident to arrest, officers found a glass jar containing methamphetamine in the cup holder. They also found a bag of cocaine, a bag of methamphetamine, and a Ruger P95 9mm handgun located behind a removable radio console after a police dog alerted to the presence of drugs. Additionally, police found a digital scale in a CD case during a subsequent inventory search of the vehicle.

The jury found Appellant guilty on two counts of possession with intent to deliver and found that Appellant had used or exhibited a deadly weapon by keeping the handgun in the radio console. During the punishment phase of trial, the State introduced Appellant's prior juvenile record, evidence suggesting that Appellant was associated with the Varrio North Side street gang, and evidence linking Appellant to the death of Michelle Chavez and the wounding of Maria Guadalupe Cavillo, who were innocent bystanders caught in a shoot-out alleged to have been between rival gangs while Appellant was on probation for another offense. The shooting formed the heart of the State's punishment case against Appellant, and the facts are essentially

undisputed. On March 27, 2009, Appellant and several friends who were on the north side of Fort Worth decided to go to a party on the other side of town with a group of acquaintances. Riding in a maroon Yukon, they followed the group of acquaintances who were in a light brown Cadillac. As they approached the party, a white Cadillac stopped in front of them, obstructing their path. Luciano Hernandez, one of the passengers in the brown Cadillac, exited the vehicle and approached the white Cadillac to confront the driver when an unidentified person emerged from the white Cadillac and opened fire. Hernandez was shot several times. Several rounds also hit the Yukon in which Appellant and others were riding. Jose Otero, Appellant's cousin, testified that at that point, Appellant grabbed a semi-automatic AK-47 from the back of Yukon, exited the vehicle, and began firing back toward the unidentified shooter.

As the shooting began, a Chevrolet Cobalt containing Isela Caldera, Maria Guadalupe Cavillo, and Michelle Chavez became trapped amidst the roadblock created by the white Cadillac, traffic, and several cars parked along the street. The three women had just returned to the house party after briefly leaving for food, and had no knowledge of gang activity at the party or any involvement in the shooting. As Caldera maneuvered into a small gap between parked cars to try and escape from the scene, her car entered into the line of fire. Cavillo was shot through the hip, and Chavez was shot in the chest and later died of her injuries.

An eyewitness testified that after the shooting, he saw the Yukon and the light brown Cadillac drive off from the scene, but that at some point they stopped to transfer the AK-47 and personnel, including Appellant, from the Yukon to the Cadillac. Police stopped the brown Cadillac as the occupants of the Yukon were taking Luciano Hernandez to the hospital. Police took the Cadillac's occupants, including Appellant, to the police station for questioning about the shooting. During questioning, Appellant submitted to a gunshot residue and gunshot primer

- 4 -

residue test. His hands and clothing both tested positive for gunshot primer residue. A bullet recovered from Cavillo's hip was of the same caliber fired by AK-47s.

At the close of evidence, counsel for Appellant requested a jury charge on self-defense and defense of third persons. The trial court denied the requested instruction. The jury sentenced Appellant to 99 years in prison on both counts, to be served concurrently at the Texas Department of Criminal Justice Institutional Division.

## MOTION TO SUPRESS

In Issue One, Appellant contends that the trial court should have granted his motion to suppress the drugs found in the Dodge Charger because the State failed to establish probable cause justifying the initial traffic stop.[1] At the motion hearing and at trial, the State alleged that an officer in an unmarked police vehicle witnessed Appellant fail to signal a turn in violation of the TEX.TRANSP.CODE ANN. § 545.104(b)(West 2011), thus providing probable cause for a second officer in a marked police car to stop Appellant.

### *Standard of Review*

At a suppression hearing, the trial judge is the sole and exclusive trier of fact and may choose to believe or disbelieve any or all of the evidence presented before it. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex.Crim.App. 2011); *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex.Crim.App. 2002). We review a ruling on a motion to suppress using a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex.Crim.App. 2010); *Guzman v. State*, 955

---

[1] In his original written motion to suppress submitted to the trial court, Appellant averred generally that "[t]he actions of the City of Fort Worth Police Department violated the constitutional and statutory rights of the Defendant under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution, and under Article 38.23 of the Texas Code of Criminal Procedure [sic]." However, at a preliminary hearing on August 22, 2011, counsel for Appellant specifically disclaimed any claims based on *Miranda*, voluntariness, and custodial interrogation and focused only on probable cause for the stop. Further, Appellant has restricted his argument on appeal to the validity of the stop. Therefore, we construe the motion to suppress as a Fourth Amendment challenge only and hold that all other constitutional and statutory claims stemming from the written motion to suppress are waived. *See Harris v. State*, 784 S.W.2d 5, 27 (Tex.Crim.App. 1989).

S.W.2d 85, 87-91 (Tex.Crim.App. 1997). Under this standard, the trial court's findings of historical fact must be afforded almost total deference provided they are supported by the record. *Valtierra*, 310 S.W.3d at 447; *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). We also defer to the court's determination of mixed questions of law and fact that turn on an assessment of a witness's credibility or demeanor. *Valtierra*, 310 S.W.3d at 447; *Amador*, 221 S.W.3d at 673. We will review de novo the trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor. *See Valtierra*, 310 S.W.3d at 447; *Amador*, 221 S.W.3d at 673.

As a general rule, appellate courts view the evidence in the light most favorable to the trial judge's ruling, regardless of whether the judge granted or denied the suppression motion. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex.Crim.App. 2011). If the ruling is reasonably supported by the record and is correct under any theory of the law applicable to the case, the reviewing court will uphold it. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996). Generally, we only consider the evidence adduced at the suppression hearing; however, where, as here, the parties relitigate the suppression issue at the trial on the merits, we consider all the evidence, from both the pretrial hearing and the trial, in our review of the trial court's ruling. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex.Crim.App. 2007).

*Analysis*

Appellant does not argue that the facts found by the trial court fail to establish probable cause to believe Appellant violated Section 545.104(b) of the Transportation Code. He instead argues that the traffic stop was pretextual and that the trial court abused its discretion by not crediting the testimony of a defense witness who claimed to have been driving in front of Appellant at the time and said she saw him use his turn signal. The subjective intent of a police

officer initiating an otherwise valid traffic stop is usually irrelevant. "The fact that the officer may have had another subjective motive for seizing [a driver] would not have made an objectively reasonable seizure unlawful under the constitutions of the United States or of this state." *State v. Gray*, 158 S.W.3d 465, 469-70 (Tex.Crim.App. 2005), *citing Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Crittenden v. State*, 899 S.W.2d 668, 674 (Tex.Crim.App. 1995). The only relevant issue here is whether the stop was otherwise justified by probable cause.

There is no question that a violation of the Texas Transportation Code provides a police officer with probable cause to stop and seize a driver. *Gray*, 158 S.W.3d at 469. As such, the suppression issue turns on the trial court's resolution of the conflicting testimony between Officer Perales and Michelle Becerra about whether Appellant actually used his turn signal. The trial court did not find Becerra credible and it found that Officer Perales observed Appellant fail to signal the turn. The trial court's determination of historical fact is supported by the record. Deferring to the trial court's resolution of credibility and fact finding as we must as we must, we conclude that the traffic stop of Appellant was supported by probable cause. Issue One is overruled.

## LEGAL SUFFICIENCY OF THE EVIDENCE

In his second issue, Appellant argues that the trial court should have granted his motion for a directed verdict because there was insufficient evidence to establish beyond a reasonable doubt that Appellant possessed the drugs found the Dodge Charger "knowingly or intentionally." Appellant's challenge to the denial of the directed verdict functions on appeal as a challenge to the legal sufficiency of the evidence. *Canales v. State*, 98 S.W.3d 690, 693 (Tex.Crim.App. 2003).

*Standard of Review and Applicable Law*

In reviewing the sufficiency of the evidence to determine whether the State proved the elements of the offense beyond a reasonable doubt, we apply the *Jackson v. Virginia* standard. *Brooks v. State*, 323 S.W.3d 893, 895-96 (Tex.Crim.App. 2010), *citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under that standard, a reviewing court must consider all evidence in the light most favorable to the verdict and in doing so determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 894-95, *citing Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. As the trier of fact, the jury is the sole judge as to the weight and credibility of witness testimony, and therefore, on appeal we must give deference to the jury's determinations. *Brooks*, 323 S .W.3d at 894-95. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Id*. On appeal, we serve only to ensure the jury reached a rational verdict, and we may not reevaluate the weight and credibility of the evidence produced at trial and in so doing substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). In our review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). The standard of review as to the sufficiency of the evidence is the same for both direct and circumstantial evidence cases. *Id.*; *Arzaga v. State*, 86 S.W.3d 767, 777 (Tex.App.--El Paso 2002, no pet.). Each fact need not point directly and independently to the guilt of the accused, so long as the cumulative force of all the evidence, when coupled with reasonable inferences to be drawn from that evidence, is sufficient to support the conviction. *Id*. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish

guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004); *Arzaga*, 86 S.W.3d at 777.

The Penal Code defines "possession" as actual care, custody, control, or management. TEX.PENAL CODE ANN. § 1.07(a)(39)(West Supp. 2013). To prove unlawful possession of a controlled substance, the State must prove that (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex.Crim.App. 2005); *see* TEX.HEALTH & SAFETY CODE ANN. § 481.115(a)(West 2010). Mere presence at a location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans v. State*, 202 S.W.3d 158, 162 (Tex.Crim.App. 2006). When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Poindexter*, 153 S.W.3d at 406.

A nonexclusive list of factors that can be sufficient, either singly or in combination, to establish someone's possession of contraband include: (1) the defendant's presence when a search is conducted, (2) whether the contraband was in plain view, (3) the defendant's proximity to and the accessibility of the contraband, (4) whether he was under the influence of a controlled substance or narcotic when arrested, (5) whether he possessed other contraband when arrested, (6) whether he made incriminating statements when arrested, (7) whether he attempted to flee, (8) whether he made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether he owned or had the right to possess the place where the contraband was found, (12) whether the contraband was found in an enclosed place, (13) whether the accused was the driver of the automobile in which the contraband was found; (14) whether he was found with a large amount of cash, (15) whether his

conduct indicated a consciousness of guilt, (16) whether he made incriminating statements connecting himself to the contraband, (17) the quantity of the contraband, and (18) whether he was observed in a suspicious area under suspicious circumstances. *Evans*, 202 S.W.3d at 162 n.12; *McQuarters v. State*, 58 S.W.3d 250, 259 (Tex.App.--Fort Worth 2001, pet. ref'd); *Lassaint v. State*, 79 S.W.3d 736, 740-41 (Tex.App.--Corpus Christi 2002, no pet.). These are simply some factors which may circumstantially establish the legal sufficiency of the evidence to prove knowing "possession." *Evans*, 202 S.W.3d at 162 n.12. They are not a litmus test. *Id*. It is not the number of links that is dispositive, but rather the logical force of all of the evidence, both direct and circumstantial. *Evans*, 202 S.W.3d at 162.

To support his contention that he did not knowingly possess the narcotics, Appellant points to testimony that the Dodge Charger in which the drugs were located belonged to Appellant's then-girlfriend Nicole Lopez, that her previous boyfriend had damaged the car stereo and Lopez had it replaced before Appellant's arrest, and that several other people had used the car between September 2009 and December 2009, including two of Lopez's ex-boyfriends with "ties to the drug world." The State argues that the jury could rationally find guilt beyond a reasonable doubt because Appellant was driving the Charger at the time of arrest; he had previously used the Charger on several occasions; he readily admitted to possession of marijuana, another uncharged contraband substance found in the car; he continued to drive for half a mile after police sirens were activated, giving him the opportunity to hide the cocaine and methamphetamine found in the car; and a large amount of narcotics were hidden in the vehicle, giving rise to a permissible inference that he was not an innocent third party. *See Robinson v. State*, 174 S.W.3d 320, 328-29 (Tex.App.--Houston [1st Dist.] 2005, pet. ref'd)(noting that a drug dealer would likely not entrust a vehicle filled with a large amount of narcotics to an

innocent third party due to risk of loss).

Our duty is not to reweigh the evidence from reading a cold record but to act as a due process safeguard ensuring only the rationality of the fact finder. *McQuarters*, 58 S.W.3d at 259. The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Id*. While Appellant did not own the vehicle where the drugs were found and there is conflicting evidence regarding the element of possession, it was the jury's task to weigh the evidence and resolve conflicts in the evidence. The jury resolved these conflicts in favor of finding Appellant knowingly possessed the cocaine found in the vehicle. We are not permitted to substitute our judgment in these matters for that of the jury. Viewing the evidence in the light most favorable to the verdict, we conclude that there is legally sufficient evidence to prove beyond a reasonable doubt that Appellant had knowledge of and control over the cocaine found in the vehicle. Issue Two is overruled.

## PRIOR BAD ACT EVIDENCE DURING SENTENCING

In his third point of error, Appellant contends that the trial court should have given the jury an instruction to disregard evidence of Michelle Chavez's death because the evidence presented was legally insufficient to establish that he committed murder beyond a reasonable doubt. Although Appellant has stated this issue in terms of charge error, he is effectively seeking a review of the legal sufficiency of the evidence supporting the bad act.

To use an extraneous offense in assessing punishment, the jury must determine that the defendant was involved in the commission of the offense beyond a reasonable doubt. TEX.CODE CRIM.PROC.ANN. art. 37.07 § 3(a)(West Supp. 2013); *compare Mitchell v. State*, 931 S.W.2d 950, 954 (Tex.Crim.App. 1996), *and Haley v. State*, 173 S.W.3d 510, 515 (Tex.Crim.App. 2005)(at punishment, the jury does not find a defendant guilty of a separate statutory offense, but

merely uses involvement in bad acts to assess a sentence), *with Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)(to convict a defendant of a statutory crime at the guilt-innocence phase of trial, each statutory element of an offense must be proven beyond a reasonable doubt). However, the standard to admit evidence of an extraneous offense is whether "the jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense." *Malpica v. State*, 108 S.W.3d 374, 377 (Tex.App.--Tyler 2003, pet. ref'd), *citing Mitchell*, 931 S.W.2d at 954.

We cannot review the legal sufficiency of evidence supporting an extraneous offense, and may only review the trial court's threshold evidentiary ruling to admit the offense. *See Malpica*, 108 S.W.3d at 379; *Thompson v. State*, 4 S.W.3d 884, 886 (Tex.App.--Houston [1st Dist.] 1999, pet. ref'd)(because punishment verdicts are general verdicts and there is no way to tell if a jury relied on an extraneous offense in reaching its verdict, appellate courts can only review the initial decision to admit evidence of extraneous offenses). This evidentiary ruling is reviewed for an abuse of discretion. *Mitchell*, 931 S.W.2d at 953.

We note that Appellant did not object to the admissibility of this evidence at trial. To present a complaint on appeal, a party is required to make a timely and specific objection in the trial court and obtain an adverse ruling. TEX.R.APP.P 33.1. As such, no error is preserved. Even so, we find that the trial court did not err in admitting evidence of the shooting and the death of Michelle Chavez.

During the punishment phase, Appellant's cousin Jose Otero testified that he saw Appellant firing an AK-47 toward a Cadillac that was situated between Appellant and Cavillo and Chavez after taking fire from that direction. Lupe Cavillo testified that during the course of the shooting, Isela Caldera, the driver of the car carrying Cavillo and Chavez, tried to escape

through a narrow space between parked cars and that all three people became caught in the crossfire. Cavillo was shot through the hip, and Chavez was shot through the chest and died. Another witness testified that he saw Appellant transfer an AK-47 from the back of a Yukon into Jose Otero's Cadillac. After the shooting, a crime scene investigator collected nine "762" shell casings capable of being fired from an AK-47 that were found at the crime scene. A bullet of the same caliber was recovered from Lupe Cavillo's hip, and a second crime scene investigator testified that the bullet from Cavillo's hip and another recovered from Isela Caldera's car had been fired from the loaded AK-47 recovered from Jose Otero's trunk. When Appellant talked to police later on that evening after accompanying Luciano Hernandez to the hospital, he was shown to be among several people with gunshot residue on his hands and clothing.

Based on this evidence, a reasonable jury could have found that Appellant caused Lupe Cavillo's injuries and Michelle Chavez's death beyond a reasonable doubt. The trial court did not abuse its discretion by admitting the extraneous offense or bad act evidence at the punishment phase. Issue Three is overruled.

### SELF-DEFENSE/DEFENSE OF THIRD PERSONS

In Issue Four, Appellant argues that the trial court committed reversible error by failing to instruct the jury on self-defense and defense of third persons in the punishment charge. This argument relates to the bad act evidence showing Appellant's involvement in the shooting of Lupe Cavillo and Michelle Chavez.

Appellate review of alleged jury charge error involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex.Crim.App. 1994); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984)(op. on reh'g); *see Sakil v. State*, 287 S.W.3d 23, 25-26 (Tex.Crim.App. 2009). First, we must determine whether error occurred. *Abdnor*, 871 S.W.2d at 732. If so, we

must then analyze whether sufficient harm resulted from the error to require reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). Under this second step, the degree of harm necessary for reversal depends on whether the appellant properly preserved the error by objection. *Id., citing Middleton v. State*, 125 S.W.3d 450, 453 (Tex.Crim.App. 2003). Where, as here, error in the charge is preserved for review, reversal is required if the error caused "some harm." *Almanza*, 686 S.W.2d at 171.

### *Error in the Charge*

As a threshold matter, Appellant must first establish that the trial court's failure to grant a self-defense instruction during the punishment phase constituted error. To establish error, the record must show that any requirements of various statutory provisions[2] referenced by TEX.CODE CRIM.PROC.ANN. art. 36.19 have been disregarded. *Posey v. State*, 966 S.W.2d 57, 60 (Tex.Crim.App. 1998). The question presented here is whether the self-defense and defense of others statutes contained in TEX.PENAL CODE ANN. §§ 9.31 and 9.32 (West 2011) respectively constitute "law applicable to the case" for the punishment phase. Cases arising from the guilt-innocence phase of trial hold that while Article 36.19 and the Article 36.14 tie-in provision do not create a *sua sponte* duty on the court to instruct on defensive theories the defendant never raises, *Posey*, 966 S.W.2d at 62, they do require the trial court, upon request, to submit a charge to the jury "[w]hen evidence from any source raises a defensive issue," regardless of whether that evidence is "strong, weak, contradicted, unimpeached, or unbelievable." *Muniz v. State*, 851 S.W.2d 238, 254 (Tex.Crim.App. 1993). Such a defense constitutes law "applicable to the case" under the Article 36.14 tie-in rule setting the baseline standard for what must be included in a jury charge. *Posey*, 966 S.W.2d at 62 n.12. Any "omission in the jury charge of a defensive issue which a defendant timely requests and which is raised by the evidence" is error subject to

---

[2] The statutory provisions establishing error are TEX.CODE CRIM.PROC.ANN. arts. 36.14 through 36.18.

the *Almanza* preservation/harm analysis. *Id*.

Whether these substantive rules apply with equal force to the punishment phase of the trial is an issue of first impression for this court. The Court of Criminal Appeals has not yet addressed whether requested jury instructions on self-defense must be issued in the punishment phase where the prosecution raises evidence of extraneous homicide offenses. The trial court's charge instructed the jury that it could not consider the bad act evidence for any purpose unless it found beyond a reasonable doubt that he committed the acts of misconduct. The trial court was not required to instruct the jury on all the elements of the murder and aggravated assault bad acts. *Haley v. State*, 173 S.W.3d 510, 515 (Tex.Crim.App. 2005); *Gomez v. State*, 380 S.W.3d 830, 838 (Tex.App.--Houston [14th Dist.] 2012, pet. ref'd). In contrast with the issue at the guilt-innocence phase, "the question at punishment is not whether the defendant has committed a crime, but instead what sentence should be assessed." *Gomez*, 380 S.W.3d at 838, *quoting Haley*, 173 S.W.3d at 515. In order to consider the bad act evidence when assessing punishment, the jury is required only to find that these prior bad acts are attributable to the defendant beyond a reasonable doubt. *Haley*, 173 S.W.3d at 515; *Gomez*, 380 S.W.3d at 838-39. Thus, to prove an extraneous offense at punishment, the State is only required to prove beyond a reasonable doubt the defendant's involvement in the bad act: a finding of guilt for a crime is not required. *Gomez*, 380 S.W.3d at 839, *citing Haley*, 173 S.W.3d at 515.

In *Gomez*, a murder case, the Fourteenth Court of Appeals held that the defendant was not entitled to a self-defense instruction in the punishment charge where the State introduced evidence he was involved in two extraneous killings which occurred prior to the charged offense. *Gomez*, 380 S.W.3d at 838. There, as here, the trial court's charge required the jury to find beyond a reasonable doubt that the defendant committed the bad act. *Id.* at 839. The Court of

Appeals held that the trial court did not err by refusing the defendant's requested self-defense instruction at punishment because the trial court's charge properly permitted the jury to consider the extraneous offense evidence only if it found beyond a reasonable doubt that the defendant had committed the extraneous offenses, and therefore, the jury was entitled to consider the evidence that they were committed in self-defense. *Id.* at 839. We agree with this analysis and will apply it here.

Even if we disagreed with *Gomez* and believed that a self-defense instruction should be given at the punishment phase under appropriate facts, we would find that Appellant is not entitled to a self-defense instruction because there is no evidence Appellant was defending himself or others against the use of deadly force by Michelle Chavez. To the contrary, all of the evidence showed that Chavez was an innocent third party who was caught in the cross-fire. Self-defense requires intentional conduct and an actor cannot recklessly act in self-defense. *See* TEX.PENAL CODE ANN. § 9.31; *Martinez v. State*, 16 S.W.3d 845, 848 (Tex.App.--Houston [14th Dist.] 2000, pet. ref'd)(a person cannot accidentally or recklessly act in self-defense). Further, self-defense does not apply in a case involving the reckless injury of an innocent third person. *See* TEX.PENAL CODE ANN. § 9.05 ("Even though an actor is justified under this chapter in threatening or using force or deadly force against another, if in doing so he also recklessly injures or kills an innocent third person, the justification afforded by this chapter is unavailable in a prosecution for the reckless injury or killing of innocent third person."). For these reasons, we overrule Issue Four and affirm the judgment of the trial court.

December 11, 2013

                                        ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

- 16 -