

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00225-CR

RICHARD B. REED                                                      APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

### FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1413225R

----------

## OPINION

----------

A jury convicted Appellant Richard B. Reed of two counts of aggravated sexual assault of a child under fourteen and one count of indecency with a child by exposure,[1] all charged in a single indictment. Upon his plea of true to the habitual allegation, the trial court sentenced him to thirty-five years' confinement

---

[1]See Tex. Penal Code Ann. § 22.021(a)(2)(B) (West Supp. 2015), § 21.11(a)(2) (West 2011).

as a habitual offender.

Appellant brings four points on appeal, challenging the admissibility of the testimony of three witnesses identified as outcry witnesses and the trial court's denial of his motion for mistrial in response to the jury's hearing and seeing a video recording of a police officer asking Appellant if he would submit to a polygraph exam. Because the trial court committed no reversible error, we affirm the trial court's judgment.

**Brief Facts**

R.P., Appellant's sister's granddaughter, was the complainant in all three cases. R.P. lived with her grandparents and referred to her grandmother, who was her guardian, as her mother or her mom. R.P. testified at trial that when she was nine years old and living with her grandparents, Appellant spent the night at their house one night. R.P. woke up in the middle of the night because she felt "like [she was] being touched . . . [i]n [her] butt." R.P. testified that this happened two or three times, including at the apartment where Appellant lived with his mother, R.P.'s great-grandmother, whom R.P. called "Big Granny." R.P. further testified that more than once at Big Granny's apartment, Appellant touched her with his fingers "in [her] bad spot where [she] go[es] pee." Finally, R.P. testified that Appellant showed her his "bad spot" once.

Ashley Johnson, formerly a forensic interviewer for the Alliance for Children in Tarrant County, testified at trial. Johnson had performed a forensic interview of R.P. on May 8, 2013. Johnson stated that not all children react the

2

same way to sexual abuse and that some children have a difficult time talking about what happened to them. Johnson then testified that R.P. had told her that Appellant "touched [R.P.] on the inside of her bad spot, which is what she referred to as her vagina," "that that happened more than one time," "that he put his finger inside of her butt," and "that he had also showed her his bad spot."

Saginaw Police Officer Brandon Badovinac testified as the investigating officer. Badovinac interviewed Appellant twice, and videos of the interviews were produced at trial as State's Exhibits 3 and 4. When the videos were offered, Appellant's attorney approached the bench and objected to showing the jury the part of State's Exhibit 3 during which Appellant was asked if he would take a polygraph exam. Outside the presence of the jury, the parties played the interviews for the trial court and agreed on when to stop the videos. When State's Exhibit 3 was played for the jury, however, it was not stopped before the jury heard Badovinac ask Appellant, "Would you be willing to take a polygraph exam?"

At that point, the prosecutor asked to approach the bench. When the trial court asked defense counsel if he wanted the jury to be instructed to disregard, he objected, "I don't think it can be cured by an instruction." The trial court excused the jury, and defense counsel moved for a mistrial. One of the prosecutors argued that the harm could be cured by an instruction, that the other prosecutor had stopped the video at the agreed-upon time, and "that's not the time on the video now. I have no explanation how that happened." The trial

3

court stated that the playing of the challenged portion was inadvertent.

After a pause in the proceedings, the trial court informed the parties of his intention to deny the motion for mistrial and to instruct the jury to disregard. Defense counsel objected to the trial court's planned instruction to the jury and argued that it would be impossible for the jury to disregard and that "[t]he jury [wa]s left to consider either he took it or passed, or he refused to take it, therefore, he must have done it. And I don't know that there is any way that we can receive a fair trial after this has happened." The trial court again denied the motion for mistrial. The trial court instructed the jury, "[W]ith regard to State's Exhibit No. 3, you heard testimony that the detective asked [Appellant] if he would take a polygraph. You are instructed to disregard that question and to not consider it for any purpose whatsoever. It will be disregarded."

In State's Exhibit 4, Appellant's second interview with the police, Appellant admitted that he spanked R.P. over her clothes once in Fort Worth and once in Saginaw. He told the police that he felt something "wet" when he swatted her, and he concluded that his fingertip must have or might have accidentally gone into her anus on both occasions, but he insisted that such actions were not intentional or sexual.

The State next called Veronica Swink, who interviewed R.P. on April 19, 2013, before Johnson conducted the forensic interview. The trial court held a hearing outside the presence of the jury to conduct a voir dire examination before Swink testified in front of the jury. Swink stated that in 2013, she worked for

4

Child Protective Services investigating referrals. She received a referral from a school regarding possible physical neglect of R.P.

Swink investigated R.P.'s home and found no reason to believe that she was being neglected, but as part of the routine questioning of R.P., Swink asked R.P. if anyone had ever touched her inappropriately. R.P. responded that Appellant "had touched her bad spot." Swink questioned R.P. more about what she meant and spoke to R.P.'s grandparents.

At the conclusion of the voir dire questioning, defense counsel objected that Swink's testimony was inadmissible hearsay and not admissible as outcry testimony because, although Swink was actually the first person to whom R.P. had reported her allegations, Johnson had already testified as the outcry witness, and Swink did not add anything new to Johnson's testimony. The State argued that the testimony was relevant because in Appellant's opening statement, defense counsel had argued that R.P. had been coached to make an outcry of sexual abuse. Specifically, defense counsel had stated in his opening statement that R.P. had spoken with Johnson and Brenda Crawford from Cook Children's Medical Center's CARE team, "[a]nd on every single opportunity that a professional had to speak with [R.P.], we received more details to this crafted story." The State pointed out that after R.P. made an outcry to Swink, Swink had not questioned her further.

The trial court replied that Johnson had provided more detailed information than Swink and also recognized that it had "hear[d defense counsel] question the

5

motive for the statements being made by the witness." The trial court therefore overruled the objection and found "the testimony . . . reliable based upon the time and content and circumstances." Swink then testified before the jury, and the State elicited essentially the same information that she had given in voir dire.

The next day of trial, the State called Crawford to testify. The trial court allowed a voir dire examination outside the presence of the jury. Crawford stated that she had conducted a sexual assault examination of R.P. and that during the examination, R.P. had told her that her grandmother's brother had touched R.P. "in a bad spot right here," and then R.P. had "pointed to her genitalia and her butt." Crawford stated that they talked about identifying body parts and that R.P. used the term "bad spot" to mean genitalia. Crawford stated that R.P. told her that Appellant had forced her to look at his "bad spot" and had ejaculated. Crawford further stated that she had asked R.P. if Appellant had used any lubricant, and R.P. had said that he had used baby oil.

The State argued that Crawford's testimony was admissible because new information was obtained from Crawford that the prior outcry witnesses had not testified to and because R.P.'s statements to Crawford had been made for medical diagnosis or treatment. Defense counsel argued that "this [wa]s just a sham" and "a trick to let the jury hear hearsay." The trial court ruled that Crawford could testify about R.P.'s statements about the baby oil and ejaculation.

Crawford testified before the jury that she took a history from R.P. as part of her diagnosis and treatment of R.P. Crawford also testified that R.P. called

6

genitalia a "bad spot," that R.P. told her that her uncle touched her "in the bad spot right here," that R.P. then "pointed to her [own] genitalia and her butt," and that R.P. told her that Appellant forced her to look at his penis. Crawford further told the jury that R.P. had told her that "white stuff" had come out of Appellant's penis and that he had used baby oil as a lubricant.

**Outcry Witnesses**

Appellant's first three points on appeal question the propriety of admitting the testimony of the three outcry witnesses, Swink, Johnson, and Crawford.

### Standard of Review

We review the trial court's decisions on the admissibility of evidence for an abuse of discretion.[2] The trial court abuses its discretion when its decisions lie outside the zone of reasonable disagreement.[3] If the trial court's ruling on admissibility is correct under any applicable legal theory, we will hold that the trial court did not abuse its discretion even if it gave a wrong or incomplete reason for the ruling.[4]

### Analysis

The State argues that multiple outcry witnesses may be appropriate when there are multiple assaultive events over a period of time, and some case law

---

[2]*Johnson v. State*, No. PD-1496-14, 2016 WL 3017842, at *10 (Tex. Crim. App. May 25, 2016).

[3]*Id.*

[4]*De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

supports this position.[5]  The statute specifically authorizing the admission of a hearsay outcry statement during the guilt phase of a trial involving allegations of child sex abuse, however, provides that it pertains only to statements describing the alleged offense made by the child complainant "to the *first* person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the offense."[6]  Although the three witnesses' testimony may include outcry evidence, other grounds justify the admission of the testimony.

R.P. testified before any of the three outcry witnesses.  Appellant's cross-examination of R.P. challenged the truthfulness of her testimony and elicited repeated responses that R.P. did not remember the events of the offenses.  He effectively impeached R.P. using many of her statements made to Johnson in the forensic interview.  His voir dire and opening statement also introduced a theme to which he would return with witnesses throughout the trial:  that R.P. had been coached to make an outcry of sexual abuse.  The Texas Court of Criminal Appeals has held that the State may offer before the jury prior consistent statements of a child sexual assault complainant under rule of evidence 801(e)(1)(B) when the child is accused of recent fabrication or improper

---

[5]*Rodgers v. State*, 442 S.W.3d 547, 552 (Tex. App.—Dallas 2014, pet. refused).

[6]Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(1)(A), (2)–(3) (West Supp. 2015) (emphasis added).

influence.[7]  Under this rule, such statements are not hearsay.[8]  Thus, R.P.'s statements to both Swink and Johnson could have been properly admitted as prior consistent statements under rule 801(e)(1)(B).[9]

Regarding R.P.'s statements made to Crawford, Crawford testified that she interviewed R.P. for the purpose of providing medical treatment.  Rule of evidence 803(4) provides that statements made for medical diagnosis or treatment are admissible hearsay.[10]  Given the record, we cannot say that Crawford had no medical purpose in interviewing R.P.[11]  Thus, Crawford's testimony about R.P.'s statements could have been properly admitted under evidentiary rule 803(4).

Because the trial court's admission of the testimony of Swink, Johnson, and Crawford regarding R.P.'s statements to them can be justified under the rules of evidence without reaching the propriety of the admission of the evidence as outcry evidence, we hold that the trial court did not abuse its discretion by

---

[7]Tex. R. Evid. 801(e)(1)(B); *Klein v. State*, 273 S.W.3d 297, 312–13 (Tex. Crim. App. 2008).

[8]Tex. R. Evid. 801(e)(1)(B).

[9]*See id.*; *Klein*, 273 S.W.3d at 312–13.

[10]Tex. R. Evid. 803(4).

[11]*See id.*; *see also Berman v. State*, No. 02-12-00119-CR, 2014 WL 2145592, at *5 (Tex. App.—Fort Worth Aug. 20, 2014, pet. ref'd).

9

admitting the evidence.[12]  We overrule Appellant's first three points.

**Polygraph**

In his fourth point, Appellant argues that the trial court reversibly erred by denying his motion for mistrial after the jury saw and heard State's Exhibit 3, a video recording, that included Badovinac asking Appellant whether he would be willing to submit to a polygraph exam.  Despite a prior agreement between the State and Appellant that the jury would not see or hear that portion of the video, for some reason the State failed to stop the replay of State's Exhibit 3.  Appellant argues that the State acted in bad faith, but the trial court found that the polygraph-request segment was inadvertently played.  The trial court sustained Appellant's objection to the introduction of the polygraph issue and instructed the jury to disregard but denied Appellant's motion for mistrial.

### Standard of Review

When the trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for a mistrial, the issue is whether the trial court abused its discretion in denying the mistrial.[13]  Only in extreme circumstances, when the harm caused by the improper remark is incurable, that is, "so prejudicial that expenditure of further time and expense would be wasteful

---

[12]*See De la Paz*, 279 S.W.3d at 344.

[13]*Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004).

and futile," will a mistrial be required.[14]   In determining whether the trial court abused its discretion by denying the mistrial, we balance three factors: (1) the severity of the misconduct or prejudicial effect, (2) curative measures, and (3) the certainty of the conviction absent the misconduct.[15]   In polygraph cases, we may also consider whether the party through whom the evidence was elicited showed bad faith in putting the evidence before the jury and whether the polygraph evidence strengthened the State's case.[16]

**Analysis**

Appellant argues that the disclosure that the police had asked him to submit to a polygraph examination revealed that he either refused the test or failed the test.   He contends that "results of a polygraph test may be disclosed not only by an affirmative statement of a witness, but merely by a question revealing that a polygraph examination has been administered."[17]   Because of their inherent unreliability and tendency to be unduly persuasive, the results of a

---

[14]*Id.* (citation and internal quotation marks omitted); *see also Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), *cert. denied*, 542 U.S. 905 (2004).

[15]*Hawkins*, 135 S.W.3d at 77; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

[16]*See Martines v. State*, 371 S.W.3d 232, 251 (Tex. App.—Houston [1st Dist.] June 23, 2011, no pet.).

[17]*See Nichols v. State*, 378 S.W.2d 335, 337 (Tex. Crim. App. 1964) (holding that asking whether witness had taken lie detector test was error that could not be cured by instruction).

polygraph examination are not admissible in Texas for any purpose.[18] But generally, an instruction to disregard is sufficient to cure any prejudice when polygraph evidence is merely mentioned and the results are not disclosed.[19]

The trial court found that the display of Badovinac asking Appellant to take a polygraph was inadvertent and that the parties had agreed that the polygraph dialogue would not be shown. After the trial court instructed the jury to disregard, no one raised the polygraph issue during the remainder of the trial. There is also no evidence that the polygraph question improperly bolstered the State's case.[20] Nor do we see any indication that the polygraph question impacted the jury or its verdict. R.P. testified that Appellant committed the actions and identified him in court. The jury also viewed her forensic interview and Appellant's interviews with the police and heard the testimony of Swink, Johnson, and Crawford. The jury had the opportunity to assess the credibility of each witness and each piece of evidence. We therefore hold that the trial court did not abuse its discretion by denying Appellant's motion for mistrial because the instruction to disregard cured any harm flowing from the mention of the potential polygraph exam. We overrule Appellant's fourth point.

---

[18]*Nethery v. State*, 692 S.W.2d 686, 700 (Tex. Crim. App. 1985), *cert. denied*, 474 U.S. 1110 (1986); *Stewart v. State*, 705 S.W.2d 232, 234 (Tex. App.—Texarkana 1986, pet. ref'd).

[19]*Martines*, 371 S.W.3d at 252.

[20]*See id.* at 251.

**Conclusion**

Having overruled Appellant's four points, we affirm the trial court's judgment.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

PUBLISH

DELIVERED:  July 14, 2016

13