

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00416-CR

---

JOSHUA GOLLIDAY                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1379815D

----------

## OPINION ON THE STATE'S MOTION
## FOR EN BANC[1] RECONSIDERATION
----------

After the majority of a panel of this court issued an opinion reversing the

trial court's judgment of conviction, the State filed a motion for rehearing en banc.

We granted the State's motion and ordered resubmission of the appeal without

---

[1]The en banc court for this appeal consists of all members of the court and Senior Justices Lee Ann Dauphinot and Anne Gardner.  *See* Tex. R. App. P. 41.2(a).

oral argument. After considering the arguments presented by the parties upon the original submission of this appeal, we withdraw our opinion and judgment dated October 13, 2016 and substitute the following.

A jury convicted Appellant Joshua Golliday of sexual assault, charged in a single-count indictment and alleged to have occurred on or about January 5, 2013. The jury assessed his punishment at two years' confinement and recommended that imposition of sentence be suspended and that Appellant be placed on community supervision. The trial court sentenced Appellant accordingly, assessing a seven-year term of community supervision. Appellant brings five points on appeal, challenging the trial court's limitations on his cross-examination and on his ability to present character evidence and contending that the State's argument constituted a comment on his silence and that the cumulative effect of trial errors was harmful. Because we hold that the trial court erroneously limited Appellant's right to present his defense, we sustain his first two points, reverse the trial court's judgment, and remand this cause to the trial court.

## Factual and Procedural Background

Complainant is a woman who lived at The Depot apartment complex in downtown Fort Worth. She testified that her apartment, number 333, was on the second floor; later she testified that she did not remember whether her apartment was on the second or third floor, but she thought it might be on the third.

Complainant was involved in a car wreck on January 4, 2013, and although she was not injured, she lost the use of her car. When she returned to her apartment, she began to drink alcohol and planned to continue drinking both in her apartment and during an evening out. She went out alone in downtown Fort Worth to Dirty Murphy's, not to socialize or to have a good time, but just to drink beer and wine. She returned to her apartment after midnight, changed into her pajamas, continued to drink wine, and started watching a movie. She described herself as intoxicated.

Complainant went out into the hallway to smoke, and she found neighbors smoking and drinking, so she stayed outside smoking and talking to them. Complainant testified that she had run out of cigarettes and had "needed to bum one," but she could not remember at trial whether anyone gave her a cigarette. She did remember that she asked Appellant, who was in the group smoking outside her apartment, to take her to the store to buy cigarettes. Complainant testified that she was then wearing black pajama pants, a long-sleeve black pajama shirt, panties, and no bra.

At the convenience store, Complainant bought cigarettes and wanted to rent a movie. At trial, she did not remember whether Appellant went into the store or stayed in the vehicle. She also testified that there was some flirting going on. When they returned to the Depot, Complainant invited Appellant into her apartment to watch the movie with her, and she testified that she made herself a drink and thought she made him a drink. While they watched the

3

movie, Complainant and Appellant began kissing consensually. In response to the prosecution's questioning, Complainant responded, "Things progressively happen[ed]. I don't—I don't remember everything exactly." Although she remembered Appellant's trying to touch her, she did not remember where he tried to touch her. She did remember that she was not okay with it and asked Appellant to leave. She testified that he responded, "'I took you to the store,' like [she] owed him." "I don't know," she further stated to the jury.

Complainant testified that when she told Appellant to leave, he grabbed her arms, turned her around, and pulled her pajama pants and panties off. When the prosecution asked her if she said anything to him, she replied, "I don't remember what I said. I just heard screaming in my head." She testified that he held her down and raped her. At trial, she testified that Appellant ejaculated, although she had told the detective investigating the incident that she was unsure whether Appellant ejaculated. She testified that she did not remember what she had told the detective. She also testified that after he raped her, Appellant ran out the front door, to the left and onto the parking lot. She had previously testified that she believed her apartment was on the third floor. Complainant testified that she put on her pajama pants, grabbed her phone, followed Appellant out onto the parking lot, and called 911.

When the defense asked Complainant on cross-examination whether she had been talking to someone on her cell phone in the stairwell before meeting up with her neighbors, she replied, "Possibly." She conceded that it was possible

4

that she had told the police that she had been in the stairwell talking on her cell phone but said that she did not "remember." She also admitted that it was possible that the people in the hall had come into her apartment but denied remembering whether they had. The defense asked her more than once whether she spoke in person to anyone other than Appellant and his friends. She denied she had but also testified, "Not that I remember." Although she denied remembering what she and Appellant had talked about, she admitted that he had told her that he was from San Diego. On cross-examination, the defense asked Complainant whether she had initiated the kissing. She denied having a memory of it but conceded that it was "[a]bsolutely" possible that she had initiated the kissing.

The defense began inquiring how Complainant had reached the hospital for the sexual assault examination. She testified that she had been taken by ambulance and that her friend Ryan Bradshaw had brought her home. But the trial court did not allow Appellant to inquire about Complainant's relationship with Bradshaw. Complainant denied that Bradshaw had been in her apartment earlier that day but admitted that he had likely driven her from her apartment to the police department for her interview with the investigating detective. Later she admitted that Bradshaw had in fact come to her apartment to take her to the police department because she had called him. Complainant admitted that Bradshaw had come into the interview room when the detective stepped out. She also admitted that he had stayed in the room with her for fifteen minutes and

5

consoled her. The defense attempted to ask Complainant exactly how Bradshaw had comforted her, but the trial court would not allow the questions and sustained the State's objections.

The defense then attempted to further clarify the events of the evening, asking whether Complainant had actually been in the hallway arguing with Bradshaw the evening she claimed she had gone into the hallway to smoke. Again, her testimony waffled, and she testified, "I honestly don't remember all the details of that day." In response to this admission, the defense asked, "Is it possible that Ryan was at your apartment and the two of you were arguing before these four guys [Appellant and his friends] got involved?" Complainant replied, "I guess it could be possible." Complainant also admitted she did not remember what she had told the investigating detective or what she had told the examining nurse about whether Appellant had ejaculated or where he had tried to touch her.

Outside the presence of the jury, the defense inquired about Complainant's statements that she made to treatment providers while she was a patient at Millwood, a substance abuse treatment facility that provided Complainant both out-patient and in-patient treatment after the alleged assault. The defense also asked Complainant about statements she made to the sexual assault nurse examiner (SANE) who performed her sexual assault examination. The defense attempted to elicit testimony that Complainant had said

- that she had not accepted the fact that she was raped;

6

- that she was a love addict;

- that she had previously accused a friend's husband of assaulting her;

- that she had herpes; and

- that she was mixing Zoloft with alcohol on the night in question.

Complainant testified outside the presence of the jury while the defense was making its proffer,

> Q.     . . . And you also know you're not supposed to take alcohol with Zoloft; is that correct?
>
> A.     I'm a recovering alcoholic.  I drink alcohol with everything.

The prosecution objected that the proffered testimony was hearsay, not relevant to the elements of the case, and inadmissible under evidentiary rule 404. The defense argued that the evidence was relevant and admissible so the jury "c[ould] get the whole picture of the situation."  The visiting judge sustained the prosecution's objections.  The defense then asked if, without mentioning Millwood, it could at least ask Complainant whether she had stated that she had not completely accepted the fact that she had been raped.  The judge again sustained the prosecution's hearsay objection.  The defense pointed out that the witness's statement was admissible, but the trial court again sustained the objection.  The defense then asked if all the matters covered by the proffer would be excluded and the judge stated that they would be.  The defense excepted to the ruling.

Before the jury, the defense asked Complainant whether she had testified she did not scream out when the alleged assault was occurring. She corrected counsel, stating, "No, I did not say that. I said I don't remember screaming. All I can hear is screaming in my head." She admitted that she did not remember "a lot of details."

**Denial of Appellant's Right to Present His Defense**

This is a traditional "he said, she said" case, a swearing match between Appellant and Complainant. The issue of sexual intercourse was uncontested. The only contested issue was consent. Appellant's defense was not promiscuity. It was that the sexual activity was consensual. At the very least, the defense was that a reasonable person would have believed the sexual activity was consensual. The excluded testimony was offered to show Complainant's inability to recall the events and to explain her conduct on the night of the alleged assault.

*The Issues*

In his first two points, Appellant argues that the trial court abused its discretion and erred by limiting his cross-examination of Complainant and the SANE, violating his constitutional rights to due process and confrontation. Within the discussion of his points, he also contends that the trial court's error violated his constitutional right to present his defense.

8

***Preservation***

The State argues that Appellant's first and second issues are "improperly presented" and not preserved and, that, consequently, this court should not consider them. We disagree.

Both the State and the conscientious dissent confuse the requirements for preserving a complaint that evidence was improperly excluded with the requirements for preserving a complaint that evidence was improperly admitted. The dissent relies on *Vasquez v. State*,[2] a case addressing preservation of error when evidence is improperly admitted, for the requirements for preserving error when evidence is improperly excluded. Respectfully, the dissent's contention that objection is required to preserve a complaint that evidence is improperly excluded is incorrect.

Rule 103 of the rules of evidence establishes the distinctly different modes of preserving error in the admission of and in the exclusion of evidence:

> (a)    Preserving a Claim of Error.  A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and:
>
> > (1)    if the ruling *admits evidence*, a party, on the record:
> >
> > > (A)    timely objects or moves to strike; and
> > >
> > > (B)    states the specific ground, unless it was apparent from the context; or

---

[2]483 S.W.3d 550 (Tex. Crim. App. 2016).

(2) if the ruling *excludes evidence*, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.[3]

When evidence is improperly admitted, objection is required to preserve the complaint.[4] When evidence is improperly excluded, no objection is required, but a proper offer of proof is required.[5] As the *Holmes* court has explained,

This court has recognized a distinction between the general rule in Rule 103(a)(2) and the case in which the defendant is not permitted to question a State's witness about matters that might affect the witness's credibility.

In the latter case, the defendant need not show what his cross-examination of the witness would have affirmatively established; he must merely establish what general subject matter he desired to examine the witness about during his cross-examination and, if challenged, show on the record why such should be admitted into evidence. In such a case the trial court's ruling has prevented a defendant from questioning a State's witness about subject matters which affect the witness's credibility, that is, matters which might show malice, ill feeling, ill will, bias, prejudice, or animus.[6]

Appellant did exactly what he was supposed to do. He told the trial court clearly what evidence he wanted the jury to hear, the prosecution objected, and the trial court sustained the objections, thereby holding that Appellant could not

---

[3]Tex. R. Evid. 103 (emphasis added).

[4]*Id.*

[5]*Id.*; *see, e.g., Holmes v. State*, 323 S.W.3d 163, 168 (Tex. Crim. App. 2009).

[6]*Holmes*, 323 S.W.3d at 168 (internal quotation marks and footnotes omitted).

present his impeachment evidence before the jury. He therefore preserved his complaints about the exclusion of evidence.

Appellant also preserved his related constitutional complaints. Both criminal and civil courts in Texas have long recognized that our trials are not silly games of "Mother, may I?"[7] "[A] party need not spout magic words . . . to preserve an issue as long as the basis of his complaint is evident to the trial court."[8] "Straightforward communication in plain English will always suffice."[9] Appellant made clear to the trial court that his defense was grounded in the evidence he sought to elicit in the cross-examinations he was blocked from presenting to the jury. That is, Appellant effectively communicated to the trial court that the complained-of rulings denied him the right to present his defense and prevented him from telling the jury "the rest of the story" so they "c[ould] get the whole picture." We therefore hold that Appellant preserved his points at trial.

### *Adequate Briefing*

Appellant likewise makes clear to this court what his complaints are. His stated points explicitly raise issues of confrontation, cross-examination, and due process. He also quotes and emphasizes an excerpt from the Texas Court of

---

[7] *Hallco Tex., Inc. v. McMullen Cty.*, 221 S.W.3d 50, 63 (Tex. 2007).

[8] *Bryant v. State*, 391 S.W.3d 86, 92 (Tex. Crim. App. 2012) (internal quotation marks and citation omitted).

[9] *Pena v. State*, 353 S.W.3d 797, 807 n.8 (Tex. Crim. App. 2011) (internal quotation marks and citation omitted).

Criminal Appeals's *Hammer* opinion, written by Judge Cochran for a unanimous court, and then relies on it in raising his complaint about the trial court's denying him the right to present his defense:

> **[T]he constitution is offended if the state evidentiary rule would prohibit him from cross-examining a witness concerning possible motives, bias, and prejudice to such an extent that he could not present a vital defensive theory**.

*Hammer v. State*, 296 S.W.3d 555, 56[3] (Tex. Crim. App. 2009) [(]footnotes omitted; emphasis added[)].

Here, the trial court's rulings did not allow jurors to fairly and fully evaluate the complainant's credibility and fully present a vital defensive theory.[10]

Thus, on appeal, Appellant clearly raises the trial court's improper denial of his constitutional rights of confrontation and cross-examination as well as the trial court's improper denial of his right to present his defense. These are the issues addressed by the Texas Court of Criminal Appeals in *Johnson v. State*,[11] and they are the essence of the *Crawford v. Washington*[12] decision. Appellant's issues are clearly presented, and his argument and contentions are easily understood by the court. We, therefore, hold that Appellant's complaints were preserved at trial and are adequately briefed in this court. We shall address Appellant's first and second points.

---

[10]Appellant's Brief at 6.

[11]490 S.W.3d 895 (Tex. Crim. App. 2016).

[12]541 U.S. 36, 57, 124 S. Ct. 1354, 1367–68 (2004).

### Substantive Law

Appellant argues that the trial court's exclusion of the evidence improperly limited cross-examination that would reveal Complainant's motive or bias and that it therefore violated his Sixth Amendment protections, quoting *Hammer*:

> Trials involving sexual assault may raise particular evidentiary and constitutional concerns because the credibility of both the complainant and defendant is a central, often dispositive, issue. Sexual assault cases are frequently "he said, she said" trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence. Thus, the Texas Rules of Evidence, especially Rule 403, should be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant in such "he said, she said" cases. And Texas law, as well as the federal constitution, requires great latitude when the evidence deals with a witness's specific bias, motive, or interest to testify in a particular fashion.
>
> But, as the Supreme Court noted in *Davis v. Alaska*, there is an important distinction between an attack on the general credibility of a witness and a more particular attack on credibility that reveals "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." Thus, under *Davis*, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." However, as Justice Stewart noted in concurrence, the Court neither held nor suggested that the Constitution confers a right to impeach the general credibility of a witness through otherwise prohibited modes of cross-examination. Thus, the *Davis* Court did not hold that a defendant has an absolute constitutional right to impeach the general credibility of a witness in any fashion that he chooses. But the constitution is offended if the state evidentiary rule would prohibit him from cross-examining a

13

witness concerning possible motives, bias, and prejudice to such an extent that he could not present a vital defensive theory.[13]

And in *Carroll v. State*, the Texas Court of Criminal Appeals stated:

> The Constitutional right of confrontation is violated when appropriate cross-examination is limited. The scope of appropriate cross-examination is necessarily broad. A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias or interest for the witness to testify. When discussing the breadth of that scope we have held,
>
> > . . . [.] Evidence to show bias or interest of a witness in a cause covers *a wide range and the field of external circumstances from which probable bias or interest may be inferred is infinite. The rule encompasses all facts and circumstances, which when tested by human experience, tend to show that a witness may shade his testimony* for the purpose of helping to establish one side of the cause only.[14]

As Appellant points out, these words of the Texas Court of Criminal Appeals are applicable in this situation, where the trial court sustained the prosecutor's objections and limited Appellant's right to cross-examination.

Citing the discussion of the issue in *Virts v. State*,[15] Appellant argues that this rule also applies to the ability to cross-examine a witness regarding a mental state that might affect her ability accurately to perceive, to recall, and to recount the events to which the witness is called to testify:

---

[13]296 S.W.3d at 561–63 (footnotes and citations omitted) (quoting *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110 (1974)).

[14]916 S.W.2d 494, 497–98 (Tex. Crim. App. 1996) (citations omitted).

[15]739 S.W.2d 25 (Tex. Crim. App. 1987).

[T]his Court has often stated and discussed the fact that one of the greatest constitutional rights that an accused person might have is the right to confront and cross-examine the State's witnesses . . . .

. . . [W]e believe that it is still necessary to point out, for emphasis purposes, that the right of cross-examination by the accused of a testifying State's witness includes the right to impeach the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness's credibility.[16]

More recently, the Texas Court of Criminal Appeals has addressed the right of a person charged with a criminal offense to cross-examine his accuser on issues that would aid the jury in assessing the accuser's credibility. In *Johnson*, the Court reminded us that a defendant has a constitutional right to present his defense to the jury so that the jury may weigh his evidence along with the rest of the evidence presented.[17]

### *Analysis*

#### *Error*

The testimony the trial court excluded, both from the SANE and from Complainant, supported Appellant's defense at trial that Complainant's testimony, recollections, judgments of reality, and conduct rendered her claims of rape suspect and not worthy of belief. Before the jury, Complainant testified that she had gone out drinking. She returned to her apartment, put on her pajamas,

---

[16]*Id.* at 29.

[17]490 S.W.3d at 914–15.

15

continued drinking, went into the hall to smoke, and "needed to bum" a cigarette from one of the men in a nearby group of smokers.  At trial, Complainant did not remember which floor her apartment was on or whether the men gave her a cigarette.  She did remember that

- she asked Appellant to take her to the store "to buy cigarettes after I—I don't remember";

- they drove to a gas station, bought cigarettes, and rented a movie; and

- they were flirting.

When they left the gas station, they went to Complainant's apartment, where she made a drink and "put the movie in."  When asked whether she made a drink for Appellant, she replied, "I think so."

While they were watching the movie, Complainant and Appellant began kissing.  At trial, the following exchange occurred between the prosecutor and Complainant:

Q. After some kissing, do things stop, or does anything else progressively happen?

A. Things progressively happen.  I don't—I don't remember everything exactly.

Q. Okay.  Do you remember, other than kissing, the Defendant trying to touch you?

A. Yes.

Q. Okay.  Do you remember where he was trying to touch you?

A. No.

Complainant did remember that she was not "okay with the touching" and asked Appellant to leave. She testified that instead of leaving, he told her, "I took you to the store." She testified that she stood up and expected him to leave. She did not testify that she told him to leave a second time, but the prosecutor asked her what Appellant had done when she again told him to leave. She responded to the leading question that he grabbed her arms and turned her around. When asked if Appellant acted aggressively, she agreed that he did.

Complainant testified that Appellant pulled her pajama pants and panties off and that she resisted. But she also testified, "I don't remember what I said. I just heard screaming in my head." She testified that she heard Appellant unzip his pants, and then he raped her. Although he was behind her and she could not see him, she testified that she knew he did not use a condom. She also testified that Appellant ejaculated. When asked if she remembered telling a police officer that she did not know whether Appellant had ejaculated, she said she did not remember telling the officer that. Complainant testified that after raping her, Appellant ran "[o]ut the front door and to the left into the parking lot." This testimony is confusing if the assault occurred in her second- or third-floor apartment. While the prosecutor attempted to clarify for the jury what Complainant meant—by referring to and pointing to places on an unidentified exhibit, the cold appellate record does not provide similar aid to this court.

On cross-examination, Complainant testified that she did not remember

17

- whether she had told a police officer that she was talking on her cell phone in the stairwell before speaking to the men smoking in the hallway, but it was possible;

- whether she had invited the men into her apartment, but it was possible;

- how it was determined which store they would go to for cigarettes;

- whether Appellant went into the store with her or waited in the car;

- what movie they rented (but she did think she would have chosen it); or

- what she and Appellant talked about in the car and afterward in her apartment.

She did remember that both she and Appellant had been drinking and that they did talk on the way to the store.

When defense counsel asked whether they had talked about Appellant's having moved a lot because his father was an evangelist, the prosecutor objected: "He's specifically trying to show he's a preacher's boy. That could resonate with them. There's plenty of other questions that could be asked." The trial court sustained the objection. The trial court also sustained the State's objection to an inquiry whether Appellant had told Complainant that he provided care for his mother, who had cancer.

Complainant's testimony then became even more confusing. She testified that the kissing was mutual but did not remember saying that she had initiated the kissing, although it was "absolutely possible" that she had initiated it. She testified that she did not remember telling the 911 officer that she did not know anything about Appellant, although she had just heard herself say it on the

18

911 recording played for the jury. Nor did she remember telling the officer on the scene that Appellant's name was Josh or Joshua and that he was from San Diego and now lived in Arlington. She only remembered saying he was from California. She denied saying he was half-black and half-white. But when defense counsel charged her with having told the 911 officer that she did not know anything about Appellant, yet telling the officer a great deal about him, she responded, "I would not call saying he's from San Diego knowing a lot about him."

Complainant testified that she did not remember how she arrived at the police department to be interviewed but that her friend Ryan Bradshaw might have taken her. She later admitted that she had called Ryan to ask for a ride to the police department. She also admitted that Ryan might have been in her apartment at some point during the day, after having previously denied it:

> Q.    Is it possible that Ryan was at your apartment and the two of you were arguing before these four guys got involved?
>
> A.    I guess it could be possible.

Appellant was not allowed to ask her about her relationship with Ryan and what might have happened between them earlier in the day.

Complainant remembered that Ryan came into the interview room. The trial court would not allow defense counsel to discuss anything that occurred between Complainant and Ryan while the detective was out of the interview room.

Outside the presence of the jury, Appellant elicited evidence of Complainant's statements while at Millwood, a hospital for treatment of addiction and mental health problems to which she had been admitted multiple times, as well as other relevant testimony:

- While she did not remember telling Millwood staff, "I'm a love addict and it sucks?", Complainant admitted that it was possible that she had said that;

- Her Millwood records indicated that she had said that she had not accepted the fact that she had been raped;

- [Defense Counsel]: Judge, the line here says, "Therapist stated that it sounded like patient learned to manipulate men, and patient held back tears as she said she did not want to be that type of person." And my question to her is: "Does she recall something like that happening, and is it possible that that's what they wrote?"

  Complainant denied that this statement from her Millwood medical records was an accurate assessment;

- Complainant believed that she was "a giant problem" to everyone;

- Complainant had been assaulted by her roommate's husband, but the charges were dropped;

- Someone in the John Peter Smith emergency room had given Complainant Xanax for a panic attack;

- Complainant was on anti-anxiety medication before and at the time of the alleged rape. She took Zoloft for anxiety and took it with alcohol. She stated outside the jury's hearing, "I'm a recovering alcoholic. I drink alcohol with everything"; and

- Complainant had herpes during her Millwood stay and at trial.

The prosecutor objected to the admission of all this evidence as hearsay, not relevant, and not admissible under Rule 404 of the rules of evidence.[18] The trial court sustained the objection and noted Appellant's exception to the ruling (although exception is no longer required to preserve the complaint).[19]

Complainant could remember some of the events of the evening but not all, she had a history of erratic behavior, and she admitted that she had ingested Zoloft and alcohol on the night in question, and perhaps Xanax. She also had a history of in-patient treatment for addiction and mental health issues. All this evidence was provided to the SANE as part of Complainant's medical diagnosis and treatment and was admissible under Rule 803(4) of the rules of evidence.[20] The SANE testified after Complainant. Although the State questioned the SANE before the jury about those portions of Complainant's medical history that supported the prosecution's case, the trial court prevented Appellant from cross-examining her fully. The trial court blocked him from presenting evidence before the jury that supported the theory of the defense. That is, the trial court allowed the State to present to the jury a portion of the medical history, but Appellant was not allowed to offer "the rest of the story" as the rule of optional completeness

---

[18] *See* Tex. R. Evid. 404.

[19] *See* Tex. R. App. P. 33.1(c).

[20] *See* Tex. R. Evid. 803(4); *Reed v. State*, 497 S.W.3d 633, 638 (Tex. App.—Fort Worth 2016, no pet.).

contemplates.[21]  Appellant's bill preserving error covers more than fifteen pages and includes multiple explanations of grounds for admissibility of the evidence. Any trial judge would have understood that Appellant was requesting full cross-examination in order to present his defense to the jury, as well as the reasons the excluded evidence was relevant and admissible.

Generally, Complainant's testimony was contradictory and difficult to follow.  But Appellant was not allowed to offer his reasons for the contradictions or his reasons that her testimony was unreliable.  That is, he was not allowed to present his defense or to fully impeach Complainant.  We therefore hold that the trial court erred by excluding the proffered evidence, thereby violating Appellant's constitutional right to present a defense.[22]

*Harm*

Under Texas Rule of Appellate Procedure 44.2(a), if the appellate record reveals a constitutional error, we must reverse a judgment of conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment.[23]  When the trial court sustained the prosecution's objections to

---

[21] *See* Tex. R. Evid. 107.

[22] *See Holmes*, 323 S.W.3d at 173.

[23] *Id.* at 173–74.

22

- Appellant's attempts to offer evidence to challenge Complainant's ability to remember the events of the evening and her ability to accurately perceive the events, and to highlight her erratic behavior that might have affected his perception of consent or lack of consent;

- his attempts to offer medical reasons to explain Complainant's physical and emotional condition that evening; and

- indeed, his attempts to offer his entire defense;

the trial court effectively deprived Appellant of his constitutional rights to due process, to confront his accusers, and to offer a defense.

Appellant told the jury he wanted to give them "the rest of the story." He said, "[T]here are gaps in this case, and we're going to try to plug those gaps for you and let you see what really happened on that day." He made clear to the trial court that he wanted to present his defense and the trial court said no. He argued on appeal that "the trial court's rulings did not allow jurors to fairly and fully evaluate the complainant's credibility and fully present a vital defensive theory," citing *Davis*[24] and *Hammer*.[25] Appellant wanted the jury to hear the rest of the medical evidence, evidence of Complainant's mental status, of her existing pattern of substance abuse and its effects, and of her relationship with the man Appellant contends was her boyfriend in the hours before she invited Appellant into her apartment and after her outcry to police. To put it simply, Appellant

---

[24]415 U.S. at 316, 94 S. Ct. at 1110.

[25]296 S.W.3d at 561–63.

23

wanted the jury to hear evidence that would allow them to judge Complainant's credibility and her ability accurately to report events as well as her motives and biases that would affect her testimony. The jury did not hear that evidence and therefore did not have the whole picture when determining Appellant's guilt and punishment. We therefore cannot conclude that the trial court's error had no effect on the jury verdict and sentence and must hold that it was harmful.

Neither the trial court nor the parties had the benefit of the reasoning and holding of the Texas Court of Criminal Appeals in *Johnson v. State.*[26] The *Johnson* court explained,

> In a case such as this, where the believability of the complainant forms the foundation of the State's case, Texas law favors the admissibility of evidence that is relevant to the complainant's bias, motive, or interest to testify in a particular fashion. "[G]enerally speaking, the Texas Rules of Evidence permit [a] defendant to cross-examine a witness for his purported bias, interest, and motive without undue limitation or arbitrary prohibition."

> . . . .

> The Texas Rules of Evidence permit the defendant to cross-examine a witness for his purported bias, interest, and motive without undue limitation or arbitrary prohibition. Rule 404(b) permits the defense, as well as the prosecution, to offer evidence of other acts of misconduct to establish a person's motive for performing some act—such as making a false allegation against the defendant. Rule 613(b) permits a witness to be cross-examined on specific instances of conduct when they may establish his specific bias, self-interest, or motive for testifying. Rule 412 specifically addresses the admissibility of evidence of a victim's past sexual behavior. Such evidence is admissible if it "relates to the motive or bias of the

---

[26]490 S.W.3d 895 (Tex. Crim. App. 2016).

24

alleged victim" or "is constitutionally required to be admitted," and if "the probative value of the evidence outweighs the danger of unfair prejudice."[27]

Following *Johnson*, we hold that the evidence Appellant wanted the jury to hear was "constitutionally required to be admitted," and the trial court therefore reversibly erred by excluding it and thereby preventing Appellant from presenting his defense to the jury. We sustain Appellant's first two points, which are dispositive. We do not reach his remaining points.[28]

## Conclusion

Having sustained Appellant's first two points, which are dispositive, we reverse the trial court's judgment and remand this case to the trial court for retrial with the benefit of guidance from the *Johnson* court.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

EN BANC

LIVINGSTON, C.J., filed a dissenting opinion in which WALKER, GABRIEL, and KERR, JJ., join.

PUBLISH

DELIVERED: July 27, 2017

---

[27] *Id.* at 910 (citations omitted).

[28] *See* Tex. R. App. P. 47.1.