**Affirmed and Memorandum Opinion filed April 11, 2024**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-22-00610-CR

_____

**FERDINAND CHIMA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 20-DCR-092050**

## MEMORANDUM OPINION

Appellant Ferdinand Chima appeals his conviction for continuous sexual abuse of a child younger than fourteen years of age in two issues. *See* Tex. Penal Code § 21.02. We affirm.

### BACKGROUND

In 2019, appellant lived with his family in Fort Bend County, Texas. Chima's family included his wife Rachel, their two sons, and their two daughters,

"Rebecca Cloud" and "Lana Carson."[1]  One night, when appellant's wife was not home, appellant called his children together for a "family meeting" to discuss why his children hated him and treated him with disrespect.  Appellant's older daughter, Rebecca, informed appellant that she did not respect him "because of something [appellant] did when [he was] younger."  At that point, appellant's wife Rachel came home with her sister, Debbie, and the "family meeting" broke up.  Rebecca and her younger sister, Lana, followed Rachel and Debbie upstairs.

Once upstairs Lana, who was eleven at the time, told her mother that she had something she wanted to tell her, but she was going to wait to tell her mother until Lana was older.  After some encouragement, Lana wrote her secret on a piece of paper and gave it to her mother.  The content of Lana's note is not found in the record, but after Rachel received Lana's note, she confronted appellant and demanded that he leave the house.  Appellant left that night.  Lana testified during appellant's trial that her note explained that appellant had been touching her.

The Fort Bend County Sheriff's Office began an investigation and they asked Rachel to take both daughters to the Children's Advocacy Center of Fort Bend (CAC) for forensic interviews.  After her forensic interview, the CAC personnel referred Lana for a sexual assault nurse examination (SANE).  Lana subsequently went for that examination, which was conducted by Sandra Sanchez, a sexual assault nurse and the director of forensic nursing for Harris Health System.  Because Lana's examination occurred several weeks after the last incident of alleged abuse, it was scheduled as a "non-acute" examination, meaning that it was not anticipated that evidence would be collected.

Appellant's counsel filed a motion to exclude "impermissible bolstering and

---

[1] In compliance with the Texas Rules of Appellate Procedure, we use pseudonyms when referring to minors, including the complainants.  *See* Tex. R. App. P. 9.8(b)(2), cmt.

any expert testimony based solely on the personal history of the child absent physical evidence of sexual assault." Appellant's motion also objected to the admission of the medical records associated with the sexual assault examination. Appellant argued that any content in the records that violated the hearsay rule should be excluded because "the information is from someone with no independent duty to report accurately." Appellant continued that the medical exception to the hearsay rule "does not apply in the absence of physical evidence of abuse." Appellant argued that the "complainants' statements would be used as a basis for the nurse to *'back door' hearsay* diagnosis or opinion that sexual abuse had occurred" (emphasis in original). Appellant's motion concluded by asking the trial court to "prohibit the State Counsel any testimony or offering any evidence regarding any personal history of the Complaining Witnesses' physical evidence of sexual assault."

The trial court held a pretrial hearing on appellant's motion. Sandra Sanchez, the nurse who conducted the SANE exam on Lana, testified during the hearing. Sanchez initially testified about her qualifications as a SANE nurse. She then explained that she is the director of forensic nursing at Harris Health System. Sanchez testified that she had conducted approximately 2,300 SANE exams during her career and had testified in court on many different occasions.

Sanchez then testified about what happens during a SANE exam. Sanchez explained that a SANE exam has four parts. According to Sanchez, the first part of the SANE exam is "obtaining a history for medical diagnosis and treatment." The second part involves a head-to-toe physical examination. The third part of the exam is a detailed genital examination, the purpose of which is to look for trauma or abnormalities. The fourth and final part of a SANE exam is evaluating the need for evidence collection. According to Sanchez, the overall purpose of a SANE

3

exam is to determine the appropriate treatment for the person undergoing the exam. Sanchez testified that she conducted all four parts of the standard SANE exam on Lana. During the exam, Lana disclosed to Sanchez that appellant had digitally penetrated Lana's vagina. Sanchez explained that anything that goes past the labia majora qualifies as "penetration."

Appellant's counsel argued that Lana's statements to the SANE nurse should be excluded because they did not fit the hearsay exception for statements made for the purpose of medical diagnosis and treatment. The State responded that Lana's statements to Sanchez were admissible because, as Sanchez testified, they were made during an examination performed for the purpose of medical diagnosis and treatment and therefore fit within that exception to the hearsay rule. The trial court overruled appellant's objections to the admission of Lana's statements made during the SANE exam conducted by Sanchez.

Lana was the first witness to testify during appellant's trial. Lana was 13 when she testified. Lana testified that she was testifying in court because her "dad sexually abused me." Lana testified that appellant sexually abused her when they lived in two different houses, one on Eton Ridge and the other on Mustang Pointe. Lana and her family lived on Eton Ridge when she was in second and third grades. Lana and her family lived on Mustang Pointe when she was in fifth, sixth, seventh, and eighth grades. Lana testified that appellant sexually abused her in both homes. Lana described appellant's actions in detail and testified that the abuse occurred weekly for several years. Lana did not say anything about the abuse at the time it occurred because she was afraid. The abuse stopped after Lana disclosed the abuse, as described above, when she was eleven years old. Lana's older sister, Rebecca, later told Lana that appellant had sexually abused her as well.

Sanchez, the director of the forensic nursing program at the Harris Health

System, testified about the SANE exam she performed on Lana. Sanchez's report of Lana's SANE exam was admitted into evidence. Sanchez testified that Lana gave a history of the sexual abuse she suffered which brought her to the SANE exam. Lana told Sanchez that appellant had touched her genitalia and that appellant's hands touched the outside and inside of her vagina. Sanchez testified that "penetration" is anything that goes past the labia majora.

Rebecca was 18 at the time she testified during appellant's trial. Rebecca testified that appellant had sexually abused her on numerous occasions when they lived in three different houses. Rebecca described the details of appellant's sexual abuse which included touching her vagina with his hand, and using her hand to massage appellant's penis.

Appellant testified in his own defense. When asked if he sexually assaulted Lana, appellant responded, "Never. Never. Not once." Appellant likewise denied sexually abusing Rebecca.

During the charge conference, appellant requested lesser-included offense instructions for "aggravated sexual assault against Lana Carson and indecency by contact against both girls." The State opposed appellant's request. The State argued that, while the requested lesser-included offenses were lesser-included offenses of the charged offense, there was no evidence in the record that would support a rational jury finding that if appellant was guilty, he was guilty only of the lesser-included offense. Appellant's counsel responded that the State's caselaw supporting its argument was distinguishable because appellant testified. At that point, the trial court asked appellant's counsel: "So my question regarding his testimony, he denied everything. So it's not that he got up and made an admission to enough elements even to get the lesser. He flat-out denied everything. . . . So[,] I'm trying to understand how you're linking in his testimony to satisfy the prong of

5

negating the higher offense and establishing the possibility that a jury could find him guilty of the lesser based on his testimony. He didn't get up and testify and admit to a lesser." Appellant's counsel responded they did not believe appellant was required to testify that he committed a lesser offense. They offered no other argument for how appellant's testimony supported the inclusion of the lesser-included offenses and asked for additional time to conduct research. The trial adjourned for the day at that point.

The charge conference resumed the next morning. Appellant's counsel re-urged their request for lesser-included offense instructions. The State pointed out to the trial court that the record had to contain "at least a scintilla of evidence that refutes the greater offense and show the defendant, if guilty, is only guilty of the lesser." After continued discussion, the trial court denied appellant's request for lesser-included offense instructions.

Following the conclusion of the charge conference and the making of various changes to the charge, the court asked the parties whether they had any objections to the charge. Appellant's counsel responded that he "had a chance to review the charge the Court has in its hand; and it's as we agreed prior to breaking; and I have no objections with it." The jury subsequently found appellant guilty of the charged offense. The trial court sentenced appellant to serve forty years in prison. Appellant filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## ANALYSIS

Appellant raises two issues on appeal. We address them in order.

I. **The trial court did not err when it denied appellant's request for the inclusion of a lesser-included offense instruction in the jury charge.**

In his first issue, appellant argues that the trial court erred when it denied his

request for a jury instruction on the lesser-included offense of indecency with a child by contact. Because there was less than a scintilla of evidence that would permit a rational jury to find that, if appellant was guilty, he was guilty only of the lesser-included offense of indecency with a child by contact, we disagree.

We apply a two-step process to determine whether a defendant was entitled to an instruction on a lesser-included offense. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). First, we determine whether the offense qualifies as a lesser-included offense under Texas Code of Criminal Procedure Article 37.09. *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011); *see* Tex. Code. Crim. Proc. art. 37.09. This is a question of law. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). Next, we determine whether there is some evidence that would have permitted the jury to rationally find that if the defendant was guilty, he was guilty only of the lesser offense. *Id*. at 536.

Although the threshold showing for an instruction on a lesser-included offense is low—more than a scintilla of evidence—the evidence must establish that the lesser-included offense is a valid and rational alternative to the charged offense. *Id*. "[I]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser included offense is warranted." *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994). While this "evidence may be weak or contradicted, the evidence must still be directly germane to the lesser-included offense and must rise to a level that a rational jury could find that if an appellant is guilty, he is guilty only of the lesser-included offense. Meeting this threshold requires more than mere speculation–it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Cavazos*, 282

S.W.3d at 385.

There is no dispute that the first step of the *Hall* analysis is met here because the Court of Criminal Appeals has determined that sexual abuse of a child by contact is a lesser-included offense of continuous sexual abuse of a child. *See Price v. State*, 434 S.W.3d 601, 606 (Tex. Crim. App. 2014) ("The acts of sexual abuse are specifically enumerated and are lesser-included offenses of the offense of continuous sexual abuse.") (internal quotations omitted); *Soliz v. State*, 353 S.W.3d 850, 854 (Tex. Crim. App. 2011) (holding that a predicate offense listed under Subsection (c) of the continuous sexual abuse statute will always be a lesser-included offense of continuous sexual abuse because the latter offense "is, by its very definition, the commission under certain circumstances of two or more of the offenses listed in Subsection (c)."). We therefore turn to whether the second step is met.

In his first issue, appellant begins his argument by asserting that, for the jury to find him "only guilty of the offense of indecency with a child by contact, the jury would have to find that the State could not prove two of the three predicate offenses beyond a reasonable doubt." Appellant then points out potential inconsistencies in Rebecca's testimony about her age and the house where she lived when the charged offense allegedly occurred. Appellant continues by pointing out that Rebecca had made prior outcries against her father that were not prosecuted and also her mother's testimony that Rebecca was "capable of lying without remorse" asserting that her allegations were not credible. When making a lesser-included offense analysis however, "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense." *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997). Instead, "there must be some evidence directly germane to a lesser-included offense for the factfinder to consider before

8

an instruction on a lesser-included offense is warranted." *Id.* We conclude this argument does not establish that appellant was entitled to a lesser-included offense instruction.

Appellant also points out his own testimony denying that he committed any sexual offense against Rebecca or Lana. This testimony does not support the inclusion of a lesser-included offense instruction because if the jury believed it, the result would be an acquittal, not finding appellant guilty of a lesser offense. *See Cavazos*, 282 S.W.3d at 385 (stating that to be entitled to a lesser-included instruction, there must be "affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense.").

Next, appellant argues he was entitled to a lesser-included offense instruction because the State did not prove penetration of Lana's vagina because Lana's testimony about penetration was equivocal. Appellant asserts that "at best, Lana testified that appellant's finger went just inside her labia majora, but not to labia minora." Here, appellant misapprehends the record because Sanchez, the SANE nurse who conducted Lana's SANE exam, testified that "penetration is anything past this labia majora, the outer lips." As a result, this evidence does not rebut the greater charge. *Id.*

Finally, appellant asserts that "the State provided affirmative evidence that if appellant was guilty of any offense it was only indecency with a child when it questioned appellant about his interview with an investigator. According to appellant, the State asked him if he told the investigator that he had admitted to his wife that he had touched Lana's vagina. Appellant denied that he had made such a statement. Appellant then points out the State's next question, which asked appellant that, if the investigator appeared in court and testified that appellant had told him that, "would that be incorrect?" Appellant answered "it would be

9

incorrect because I told him what happened- -'" At that point, the State objected appellant's answer was nonresponsive and the trial court sustained the objection. Appellant asserts that he was entitled to a lesser-included offense instruction because this objection by the State left "the jury with the impression that at some point, appellant had admitted to touching 'on' Lana's vagina." Here, the only evidence in the record is appellant's denial that he made such a statement to an investigator. A prosecutor's question or objection is not evidence. As a result, appellant has not pointed out "affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense" and therefore does not establish that the trial court erred when it denied appellant's request for a lesser-included offense instruction. *Id.* We overrule appellant's first issue.

## II. The trial court did not abuse its discretion when it overruled appellant's motion to exclude the SANE nurse's testimony.

Appellant complains in his second issue about the trial court's denial of his pre-trial motion to exclude Sanchez's testimony about Lana's SANE exam. In appellant's view, the trial court abused its discretion when it denied his motion because Sanchez's testimony did not meet the requirements of the medical diagnosis or treatment hearsay exception. *See* Tex. R. Evid. 803(4) (providing that statements made for or reasonably pertinent to medical diagnosis or treatment are not excluded by the rule against hearsay). We disagree.

We review a trial court's decision to admit evidence for an abuse of discretion. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). A trial court abuses its discretion only if "the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992). If the trial court's

evidentiary ruling was correct on any theory of law applicable to that ruling, we must affirm the ruling. *Gomez v. State*, 380 S.W.3d 830, 836 n.9 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (citing *De La Paz v. State,* 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

Hearsay is a statement made outside of court offered into evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Although hearsay is generally inadmissible, Rule 803 provides an exception for admitting hearsay statements describing sexual abuse that were made for the purpose of facilitating medical diagnosis or treatment. *Bargas v. State*, 252 S.W.3d 876, 896 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). "Hearsay statements by a suspected child victim of abuse regarding causation, source of abuse, or describing abusive acts are admissible under Rule 803(4) as being pertinent to the medical treatment of a victim." *Id.*

Appellant argues that the trial court abused its discretion when it admitted Sanchez's testimony because, in appellant's view, the SANE examination was not for the purpose of medical diagnosis or treatment because Lana's examination did not lead to any medical or psychological diagnosis, or a therapeutic treatment plan. Instead, appellant argues, the sole purpose of Lana's SANE exam was to bolster Lana's testimony about the nature of the abuse."

In making his argument, appellant ignores Sanchez's testimony. Sanchez testified that the purpose of taking a history during a SANE examination is for the purpose of medical diagnosis and treatment. Sanchez explained that she relies on the words of the patient undergoing the SANE examination to determine the appropriate treatment. Sanchez also explained that it is important for her to know the different ways in which a child assault victim was sexually abused to determine whether testing for sexually transmitted diseases needs to be done. Finally,

11

Sanchez testified that knowing the history of the patient's sexual abuse and the identity of the abuser are important to evaluate the emotional trauma level the patient is experiencing. Based on this testimony, we cannot say that the trial court abused its discretion when it overruled appellant's hearsay objection and admitted the challenged evidence pursuant to Rule 803(4) of the Texas Rules of Evidence. *See Reed v. State*, 497 S.W.3d 633, 638 (Tex. App.—Fort Worth 2016, no pet.) ("Given the record, we cannot say that Crawford had no medical purpose in interviewing R.P. Thus, Crawford's testimony about R.P.'s statements could have been properly admitted under evidentiary rule 803(4)."). We overrule appellant's second issue.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's judgment.

/s/    Jerry Zimmerer
       Justice

Panel consists of Justices Bourliot, Zimmerer, and Spain (Spain, J., concurring without opinion).

Do Not Publish — Tex. R. App. P. 47.2(b).