**Affirmed and Opinion filed August 16, 2012.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00379-CR

---

**MARIO GOMEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 232nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1235081**

---

## O P I N I O N

A jury convicted appellant Mario Gomez of murder and assessed punishment at forty years' imprisonment. Appellant argues the trial court erred by (1) denying appellant's requested instruction on the affirmative defense of duress during the guilt-innocence phase of the trial, (2) excluding evidence regarding appellant and Alanis's previous relationship, and (3) denying appellant's requested self-defense instruction during the punishment phase of trial. We affirm.

### BACKGROUND

In 2009, Mario Alanis and his family controlled the drug trade in a neighborhood

of southwest Houston where appellant and his cousin Joseph Rodriguez sold drugs. Appellant and Rodriguez paid the Alanis family "rent" in the amount of $2,500 per week to be entitled to sell drugs in the neighborhood, until the Alanis family increased the rent to $4,000 per week. When the increased rent prompted appellant and Rodriguez to stop dealing drugs there, the Alanis family became upset. Appellant alleged that Alanis attempted to kidnap appellant's cousin, Rodriguez's sister, over the dispute. Appellant's uncle, Rodriguez's father, became angry and promised to retaliate when he learned about the attempted kidnapping.

Alanis and his associate were leaving an apartment complex in the neighborhood on September 20, 2009, when a silver Impala drove by and one or more of its occupants opened fire on Alanis. Alanis and his associate were shot multiple times. The gunfire also injured several occupants of a vehicle caught between the Impala and Alanis. Witnesses identified appellant and Rodriguez as two occupants of the Impala, although no witness could affirmatively state whether either individual held or fired a weapon. Alanis died from his injuries, but his associate survived. The medical examiner could not determine what caliber of bullet caused any of Alanis's wounds.

Police recovered multiple .357 SIG cartridge casings and 7.62 x 39 millimeter[1] cartridge casings from the crime scene. Police located the Impala and discovered a .40 caliber bullet lodged in the headliner above the rear passenger's side window that appeared to have been fired from the driver's side backseat.

Appellant gave police a video-recorded statement in which he initially admitted being present in the passenger's side of the Impala next to the driver, the girlfriend of Rodriguez's father, but denied any knowledge that a shooting was about to take place. There were two other passengers in the backseat: Rodriguez and his father.[2] Appellant told police that Rodriguez's father brought an AK-47 and a .357 caliber Glock pistol into

___

[1] The 7.62 x 39 millimeter cartridge casings were of a type that could be fired from an AK-47 or an SKS rifle.

[2] Appellant told police Rodriguez's father came to Houston from Waco after he found out the Alanis family attempted to kidnap Rodriguez's sister.

2

the Impala. Appellant claimed they were "just riding and smoking"[3] when they coincidentally came upon Alanis and his associate. Appellant claimed that Rodriguez's father suddenly hopped out of the car, began firing the AK-47, emptied the clip, and then fired the Glock out of the rear passenger's side window. Appellant denied that he fired and claimed that he ducked when Rodriguez's father started firing. He claimed to have had "nothing to do with [the shooting]."

When police told appellant that witnesses stated all three passengers had fired from the Impala, appellant said it must have been the driver because it "seemed like she had a gun too." Finally, police revealed that Rodriguez told them appellant fired a Glock. Appellant admitted, "It's true," but claimed he was shooting out the window and "not aiming" because he thought Alanis and his associate were shooting at the Impala. Appellant said he threw the Glock into the Brazos River.

Appellant and Rodriguez both were indicted and tried together for murder. Over appellant's objection, the trial court admitted appellant's video-recorded statement into evidence. The jury was instructed that they could find appellant and Rodriguez guilty based on a theory of party liability, and the jury convicted both appellant and Rodriguez of murder.[4]

During the punishment phase of the trial, the State introduced evidence that appellant and Rodriguez had shot and killed two individuals two days before Alanis's murder. Police recovered multiple .40 caliber and .357 cartridge casings from that crime scene. The State introduced an additional video-recorded statement given to police by appellant in which he admitted to his participation in the earlier shooting. He stated he thought one of the victims was reaching for a weapon, which prompted appellant and Rodriguez to open fire. Appellant and Rodriguez had been charged with capital murder for the earlier killings, but these charges were dismissed. The trial court denied appellant

---

[3] He explained that he meant they were driving around smoking marijuana.

[4] We recently affirmed Rodriguez's conviction. *See Rodriguez v. State*, 368 S.W.3d 821 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

and Rodriguez's requested instructions on duress and self-defense, and the jury assessed a punishment of 40 years' imprisonment each for appellant and Rodriguez.

ANALYSIS

## I.      Instruction on Duress

In his first issue, appellant argues the trial court should have granted appellant's request for a jury instruction on duress because evidence was presented that "[Rodriguez's father] had told both [appellant and Rodriguez] to come with him," he was violent, and his family members were afraid of him.

A person commits murder by (1) intentionally or knowingly causing someone's death; (2) intending to cause serious bodily injury and committing an act clearly dangerous to human life that causes someone's death; or (3) committing or attempting to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, committing or attempting to commit an act clearly dangerous to human life that causes someone's death. Tex. Penal Code § 19.02(b). Under the law of parties, a "person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id*. § 7.01. A person is "criminally responsible" for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id*. § 7.02(a)(2).

"It is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent . . . serious bodily injury to himself or another." *Id*. § 8.05(a). Duress is, on its face, a confession-and-avoidance or "justification" type of affirmative defense. *Rodriguez v. State*, 368 S.W.3d 821, 824 (Tex. App.—Houston [14th Dist.] 2012, no pet.). This is so because "this justification, by definition, does not negate any element of the offense, including culpable

4

intent; it only excuses what would otherwise constitute criminal conduct." *Id*. (citing *Juarez v. State*, 308 S.W.3d 398, 401–03 (Tex. Crim. App. 2010) (defining defense of necessity as confession-and-avoidance or "justification" defense) and *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007) (defining Good Samaritan defense as confession-and-avoidance or "justification" defense)).

The confession-and-avoidance doctrine required appellant first to admit he "engaged in the proscribed conduct" by admitting to all elements of the underlying offense and then to claim that his commission of the offense was justified because of other facts. *Id*. One may not establish that an act is justified without first identifying, or admitting to the commission of, the predicate act. *Id*. A defendant's failure to testify, stipulate, or otherwise proffer evidence admitting that he "engaged in the proscribed conduct" prevents the defendant from benefitting from the defense of duress. *Id*. (citing *Shaw*, 243 S.W.3d at 659 (defendant is entitled to jury instruction on such a defense only "when the defendant's defensive evidence essentially admits to every element of the offense, including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct" (emphasis omitted)).

Appellant did not testify, stipulate, or otherwise proffer evidence that he "engaged in the proscribed conduct."[5] The State introduced appellant's video-recorded statement over appellant's objection and after the trial court overruled appellant's motion to suppress,[6] which contains conflicting accounts of the incident.[7] The State's tender of this

---

[5] Appellant presented evidence that he was in the Impala with the others at the time of the shooting, Rodriguez's father had been armed and had instructed him to go, and he was afraid to go, but this evidence alone does not show that he engaged in any proscribed conduct. *See Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1981) (op. on rehearing) (noting mere presence of accused at scene of offense is not alone sufficient to establish guilt as party, although it is a circumstance tending to prove guilt when combined with other facts).

[6] The transcript of the hearing on appellant's motion to suppress was not included in the record, but appellant's counsel objected to the State's tender of appellant's statement as follows: "Judge I would just renew my previously stated objections that we had during our pre-trial hearing." The trial court overruled the objection.

[7] Appellant first claimed he had "nothing to do" with the shooting, but later admitted firing out the window of the Impala while "not aiming" because he thought he was being fired upon.

5

conflicting evidence does not show that appellant admitted to its veracity. *See id.* at \*4.

Because appellant failed to testify, stipulate, or otherwise proffer defensive evidence admitting his commission of the underlying offense, we conclude that he was not entitled to a jury instruction on the affirmative defense of duress. We overrule appellant's first issue.

## II. Evidence of Appellant and Alanis's Previous Relationship

In his second issue, appellant asserts the trial court abused its discretion by excluding evidence regarding appellant and Alanis's previous relationship. We assume without deciding that appellant preserved error on this issue and conclude that the trial court erred, but the error was not harmful.

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). A trial court abuses its discretion when its decision is so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *Id.* Article 38.36(a) of the Code of Criminal Procedure provides:

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

Tex. Code Crim. Proc. art. 38.36(a). Under this article, prior acts of violence between the victim and the accused may be offered to illustrate the nature of their relationship as long as they also meet the requirements of Rule of Evidence 404(b).[8] *Garcia v. State*, 201 S.W.3d 695, 702 (Tex. Crim. App. 2006).

Appellant complains that the trial court abused its discretion in sustaining the

---

[8] Rule 404(b) deals with admissibility of evidence regarding acts of violence, which are not admissible to prove a person's character. Tex. R. Evid. 404(b); *Garcia v. State*, 201 S.W.3d 695, 702 (Tex. Crim. App. 2006). This evidence may be admissible, however, as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Tex. R. Evid. 404(b).

State's relevance objections to testimony from appellant's mother regarding three incidents:

(1) In June 2009, Alanis and his brother held appellant at gunpoint. Appellant's mother called the police. When the police responded, she received a phone call from an anonymous caller saying that if she wanted to see her son again, she would tell the police to leave. She did so, and appellant was released.

(2) After Alanis "raised the rent," appellant's mother saw Alanis gesturing and heard him screaming at appellant, "Where is my money?"

(3) The day before Alanis was killed, appellant's mother, her boyfriend, and her youngest son were leaving her apartment, and their car was followed by Alanis's associates onto the freeway. Alanis's associates pointed guns at appellant's mother and the other occupants of the vehicle while they were on the freeway. [9]

Although appellant made an offer of proof and obtained a ruling on the State's relevance objections, to preserve error on this issue, he also was required to "do everything necessary to bring to the judge's attention the rule or statute in question and its precise and proper application to the evidence in question." *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005). Appellant argued this testimony was relevant to explain "the rent money [situation]" and "why [the shooting] happened" but did not specifically bring article 38.36(a) to the trial court's attention.[10] We assume without deciding that appellant properly preserved error on this issue because "the key word in [article 38.36(a)] is 'relevant.'" *Vega v. State*, 898 S.W.2d 359, 363 (Tex. App.—San Antonio 1995, writ ref'd) (citing Tex. Penal Code § 19.06(a) (now codified at Tex. Code

---

[9] The State also objected to testimony regarding the first and second incidents as being based on hearsay. If the trial court's evidentiary ruling was correct on any theory of law applicable to that ruling, we must affirm the ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). We hold that the testimony regarding the phone call from an anonymous caller was inadmissible hearsay properly excluded on that basis, but the record does not show that the testimony regarding Alanis holding appellant at gunpoint was based on hearsay. *See* Tex. R. Evid. 801.

[10] Appellant made these arguments only as to the testimony recounting Alanis kidnapping appellant and Alanis yelling at appellant about money. Appellant did not repeat these arguments when he made the offer of proof, which included a recap of the additional testimony that Alanis's associates pointed a gun at appellant's family members.

Crim. Proc. art. 38.36(a)).[11]

We conclude the testimony that Alanis held appellant at gunpoint and Alanis screamed at appellant regarding money was relevant to show appellant's previous relationship with Alanis and appellant's state of mind at the time of the offense. *See Garcia*, 201 S.W.3d at 703-04 (holding incident involving defendant pushing complainant, his wife, out of car was relevant to circumstances surrounding their previous relationship such as their separation, attempt to reconcile, and divorce); *Vega*, 898 S.W.2d at 362-63 (holding trial court abused its discretion in excluding evidence that complainant's gang attacked defendant and one gang member pointed gun at him when evidence was offered to show previous relationship between defendant and complainant and defendant's state of mind at time of offense). We thus find the trial court abused its discretion in excluding the evidence of these two incidents on the basis of relevance.[12]

However, we further conclude that the trial court's error was harmless. To determine whether the trial court's error in excluding evidence was harmless and therefore not reversible, we assess whether it affected appellant's substantial rights. *Fox v. State*, 115 S.W.3d 550, 563 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (citing Tex. R. App. P. 44.2(b) and *Johnson v. State*, 43 S.W.3d 1, 3–4 (Tex. Crim. App. 2001)).[13] Error affects a substantial right when it has a substantial and injurious effect or influence in determining the jury's verdict. *Id.* In assessing the likelihood that the error adversely affected the jury's decision, we consider everything in the record, including all testimony and evidence admitted for the jury's consideration, the nature of the evidence

---

[11] "[A]ll *relevant* facts and circumstances surrounding the killing and the previous relationship between [appellant and Alanis, including appellant's] condition of . . . mind . . . at the time of the offense" were admissible. *See Vega*, 898 S.W.2d at 363 (emphasis added); *see also* Tex. Code Crim. Proc. art. 38.36(a).

[12] We decline to find the trial court abused its discretion in excluding the evidence regarding Alanis's associate pointing a gun at appellant's family members because no evidence was offered that either appellant or Alanis was directly involved with that incident. *But cf. Vega*, 898 S.W.2d at 363 (regarding incident involving defendant and complainant's gang but not complainant).

[13] We analyze harm under Rule 44.2(b) because the error is not constitutional. *Fox*, 115 S.W.3d at 563.

supporting the verdict, the character of the alleged error, and how the error might have been considered in connection with other evidence in the case. *Id.*

The record in this case was replete with testimony concerning the ill will between appellant and Alanis. The jury heard ample testimony about the "rent" issue: that Alanis was angry about appellant no longer paying him rent and had retaliated by attempting to kidnap appellant's cousin. Appellant's cousin testified that she was in an apartment with her friend, a member of Alanis's gang, two days before Alanis was killed. The friend pulled out a nine-millimeter gun and was twirling it. Alanis then knocked on the door and walked into the apartment. Appellant's cousin testified, "[H]e looked right at me and like I got scared. . . . I had a feeling so I ran." She ran outside and downstairs. Alanis chased her and shot at her, but she got away. She did not report the incident to the police because she knew what the gang members were "capable of doing."

We conclude this evidence presented the jury with a full picture of appellant's relationship with Alanis and appellant's state of mind at the time of the offense. Thus, the trial court's error in excluding the evidence enumerated above did not affect appellant's substantial rights. We overrule appellant's second issue.

## III.    Self Defense Instruction at Punishment

Appellant argues in his third issue that the trial court erred in refusing to instruct the jury on self defense during the punishment phase of trial regarding two extraneous killings that occurred two days before Alanis's murder.[14] We conclude that appellant was not entitled to a self defense instruction pertaining to evidence of the two extraneous killings that the State introduced during the punishment phase of trial.[15]

---

[14] Co-defendant Rodriguez argued that the trial court erred by excluding evidence of self defense as to these killings during the punishment phase, but did not argue on appeal that the trial court erred in refusing the self defense instruction. *Rodriguez*, 368 S.W.3d at 825.

[15] The parties have not cited and we have not found any other cases that directly address this issue. We previously held in an unpublished case that an instruction on self defense with regard to the tried offense is not necessary at the punishment phase of trial because it is not relevant to the jury's assessment of punishment. *See Moses v. State*, No. 14-93-00994-CR, 1997 WL 111068, at *15 (Tex. App.—Houston [14th Dist.] Mar. 13, 1997, writ ref'd) (mem. op., not designated for publication) (citing

In a statement introduced during the punishment phase, appellant claimed that he and Rodriguez approached the two victims as they were sitting outside the apartment complex near where Alanis was shot two days later. Appellant claimed one of the victims "sold dope" for the Alanis family. Appellant asked the victims why the Alanis family had involved appellant's family in the rent dispute. Per appellant, one of the victims replied, "[****] you" while reaching for his pocket. Appellant said he thought the victim was reaching for a gun and, in response, appellant and Rodriguez opened fire. A witness to the shooting also testified that one of the victims "looked like he reached in his pocket and grabbed a gun." Appellant requested an instruction on self defense but did not want a corresponding instruction on murder.[16] The trial court denied the request but instructed the jury as follows:

> If there is any evidence before you in this case regarding the defendant having committed acts of misconduct other than the offense for which you have found him guilty, you cannot consider any such evidence for any purpose unless you believe beyond a reasonable doubt that the defendant committed such other acts of misconduct.
>
> If you do not believe beyond a reasonable doubt that the defendant committed any such acts of misconduct or if you have a reasonable doubt thereof, you must disregard all such evidence about which you have a

*Nixon v. State*, 572 S.W.2d 699, 701 (Tex. Crim. App. [Panel Op.] 1978) (other citations omitted). But evidence of extraneous offenses or bad acts is admissible during the punishment phase of trial as relevant to the jury's assessment of punishment. *See* Tex. Code of Crim. Proc. art. 37.07 § 3(a)(1).

[16] The colloquy between the trial court and appellant's counsel follows:

THE COURT: So, would you also be asking that I include in the punishment charge the definition of capital murder and all the definitions that would go with that and say do you find from the evidence beyond a reasonable doubt that they committed capital murder?

. . . .

MR. LOPER: . . . . I don't think that, no, ma'am, I don't. I don't think that one leads to the other, no.

. . . .

THE COURT: So, you wouldn't have me define the offense of capital murder. You'd just have me put self-defense in.

MR. LOPER: That's what we're requesting, yes.

THE COURT: Okay. Overruled.

reasonable doubt and not consider it for any purpose whatsoever. Appellant acknowledges that the trial court was not required to instruct the jury on all the elements of an extraneous offense, *see Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005), but argues that an instruction on self defense was necessary because a justifiable homicide committed in self defense is not an act of misconduct.[17]

Regarding extraneous offense or bad act evidence admitted during the punishment phase of trial, the Court of Criminal Appeals has held,

> [T]he question at punishment is not whether the defendant has committed a crime, but instead what sentence should be assessed. Whereas the guilt-innocence stage requires the jury to find the defendant guilty beyond a reasonable doubt of each element of the offense, the punishment phase requires the jury only find that these prior acts are attributable to the defendant beyond a reasonable doubt.

*Id.* at 515. Thus, to prove an extraneous offense at punishment, the State is only required to prove beyond a reasonable doubt a defendant's involvement in the bad act: a finding of guilt for a crime is not required. *Id*.

Applying this principle, we hold that the trial court did not err in refusing appellant's requested instruction regarding self defense. Whether the extraneous killings were acts of misconduct was squarely presented to the jury for consideration. The jury was charged properly only to consider the extraneous killings if the jurors believed beyond a reasonable doubt that appellant "committed acts of misconduct other than the offense for which [the jury] found him guilty," but the jury was not required to find appellant guilty of murder. *See id*. In deciding whether the extraneous killings were acts of misconduct, the jury was entitled to consider the evidence that they were committed in

---

[17] In *Haley v. State*, the court of appeals determined that the trial court erred by failing to define the law of parties in the extraneous offense section of the punishment charge. 113 S.W.3d 801, 810–14 (Tex. App.—Austin 2003), *aff'd*, 173 S.W.3d 510 (Tex. Crim. App. 2005). The Court of Criminal Appeals did not consider whether the court of appeals erred by holding that the trial court should have included an instruction or definition regarding the law of parties. *Haley*, 173 S.W.3d at 514–15. However, the court did determine that an extraneous bad act, proved beyond a reasonable doubt to be attributable to the defendant, is admissible, regardless of whether the act amounts to an offense under the Penal Code. *Id*.

self defense.  Thus, a self defense instruction regarding the killings was not required.

We overrule appellant's third issue.

Having overruled appellant's three issues, we affirm the judgment of the trial court.

/s/     Martha Hill Jamison
          Justice

Panel consists of Chief Justice Hedges and Justices Jamison and McCally.

Publish — TEX. R. APP. P. 47.2(b).

12