**AFFIRM; and Opinion Filed July 12, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00429-CR
### No. 05-17-00430-CR

**KEYSHA KEYYOR TUGLER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F16-47527-N, F16-47528-N**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Evans, and Schenck
Opinion by Justice Schenck

Keysha Keyyor Tugler appeals two convictions of aggravated robbery. In her first issue, appellant challenges the sufficiency of the evidence to support her convictions for aggravated robbery. In her second, third, fourth, and fifth issues, appellant complains of several evidentiary rulings. In her sixth issue, she contends the trial court erred in denying her effort to call a co-defendant as a witness. In her seventh and final issue, appellant urges the trial court erred in overruling her objection that the jury charge did not contain a defensive issue on duress. We affirm the trial court's judgment. TEX. R. APP. P. 47.4.

### BACKGROUND

At a convenience store at 1:20 a.m. on June 18, 2016, a night manager had just finished with a transaction involving a female customer. A delivery driver was also present making a

delivery. At that moment, two individuals ran into the store brandishing guns. Both gunmen had their faces covered, one with black-and-white fabric and the other with a mask. The assailants took the female customer's wallet, cell phone, and purse. Then the two robbers demanded the delivery driver open the registers. When the robbers collected the money (approximately $30) from the registers, they questioned the delivery driver about the store's safe. The delivery driver responded that he did not know how to open the safe, and the robbers fled the store. The driver's assistant had remained in the parking lot to close up the trailer and, from his vantage point, observed a white Dodge driven by a black female speeding from the scene. The driver's assistant then went into the store and learned that there had just been an armed robbery. The night manager dialed 9-1-1 to report the incident.

K.N.H., who had been on the phone with the female customer, heard someone say, "this is a M_____ F_____ robbery; open up the register now." K.N.H. heard the female customer ask, "is this for real?" K.N.H. screamed the female customer's name, but the female customer did not respond. K.N.H. maintained the connection with the female customer's phone and dialed 9-1-1 on her son's phone.

The police used a description of the robbers' car and the location of the female customer's phone to locate the robbers' vehicle. When the police stopped the suspect car, appellant and the two robbers got out. After obtaining a search warrant, the police discovered a black-and-white shirt, a gray skull mask, a revolver, an air-soft toy gun, a plastic bag of cash, the female customer's purse, and the female customer's phone in the back seat of the car.

Appellant was indicted for the offense of aggravated robbery in two separate cause numbers. She pleaded not guilty in both cases, which were tried concurrently before a jury. The jury found appellant guilty, and after appellant pleaded true to the enhancement paragraph

identified in each cause, the jury assessed her punishment in each cause number at 37 years' confinement.

DISCUSSION

## I. Sufficiency of the Evidence

In her first issue, appellant challenges the sufficiency of the evidence to support her convictions for aggravated robbery. She urges that although the driver's assistant testified he saw a black female driving the getaway car, he did not identify appellant in court as the driver he saw leaving the gas station. Likewise, while K.N.H. testified that after the female customer's phone was stolen, she could hear another female voice speaking in the background, she did not identify appellant in court as the female speaking. Appellant nevertheless effectively acknowledges driving the car by which the robbers escaped, but urges that the robbers threatened her with a gun and made threats against her family that forced her to drive the car.

When reviewing whether there is legally sufficient evidence to support a criminal conviction, the standard of review we apply is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard tasks the factfinder with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts. *Id.* On appeal, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.* Thus, we are not permitted to use a "divide and conquer" strategy for evaluating sufficiency of the evidence because that approach does not consider the cumulative force of all the evidence. *Id.* When the record supports conflicting inferences, we

presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Id.* at 448–49.

A person commits aggravated robbery if, in the course of committing theft, and with intent to obtain or maintain control of property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death and uses or exhibits a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 29.02 (a), 29.03 (a)(2). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of it. *Id.* § 31.03(a). A deadly weapon is anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. *Id.* § 1.07(a)(17)(B).

The State may prove a defendant's identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). A lack of direct evidence is not dispositive of the issue of guilt. *Id.* Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient. *Id.* On appeal, the same standard of review is used for both circumstantial and direct evidence cases. *Id.*

Parties to an offense may be charged with the commission of a crime as if they committed it themselves. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016). A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02 (a)(2). When a party is not a primary actor, the State must prove conduct constituting an offense plus an act committed by the defendant with intent to promote or assist such conduct. *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985) (en banc). A jury may consider events occurring before, during, and after the commission of the offense in determining whether the defendant participated as a party. *Gross v.*

–4–

*State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). There must be sufficient evidence of an understanding and common design to commit the offense. *Beltran v. State*, 472 S.W.3d 283, 290 (Tex. Crim. App. 2015). Circumstantial evidence may be used to prove a defendant is a party to an offense. *Cary*, 507 S.W.3d at 758; *Gross*, 380 S.W.3d at 186. A defendant can be convicted as a party if the evidence establishes that he participated in the commission of the offense by driving the getaway vehicle. *See Davis v. State*, 05-13-00200-CR, 2014 WL 1778269, at *8 (Tex. App.—Dallas May 1, 2014, pet. ref'd) (mem. op., not designated for publication) (evidence held sufficient to show defendant knowingly aided commission of robbery by serving as "getaway driver" who helped principal actor flee scene, thus supporting appellant's conviction as party to murder).

Appellant's arguments challenge the sufficiency of the evidence of her identity and culpability. The record contains the following evidence. The driver's assistant at the convenience store testified that on the night of the robbery, he heard tires squealing and saw a black female driving the car that was later identified as the getaway car. K.N.H. testified that after she heard the robbery through the phone call with her friend, she kept the connection open and heard two male voices re-enacting the robbery that had just occurred, then she heard a female voice speaking and laughing. K.N.H. also heard the three people discussing whether to commit another robbery. She stated she listened to the people who had her friend's phone for approximately two hours and that it sounded as though they were driving, laughing, and having a party. She testified the female's voice did not sound panicked, nor did anyone make any demands or threats. Further, K.N.H. did not believe anyone knew the call was still in progress or that they knew she was listening. When the robbers' car was stopped, appellant was the only female in the car. The vehicle contained two firearms and similar items as those used by the robbers to mask themselves, as well as the female customer's purse and phone. The police officer who initiated the stop of the

car testified that based on his nine-year experience as a police officer, appellant behaved atypically. While most people he had observed under similar circumstances were nervous or shaking or crying, appellant appeared "very calm, very collected . . . just very almost nonchalant about the whole situation."

While appellant argues that she was compelled to participate in the flight from the scene of the robbery, the jury was not compelled to credit that version of events, and its contrary verdict is supported by the evidence. *See Murray*, 457 S.W.3d at 448–49. Viewing the foregoing evidence in the light most favorable to the verdict, a jury could find appellant participated in the robbery as the driver of the getaway car and that she did so voluntarily.

We overrule appellant's first issue.

## II. Evidentiary Rulings

### A. *Standard of Review*

We review a trial judge's decision on the admissibility of evidence under an abuse of discretion standard. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). A trial judge abuses his discretion when his decision falls outside the zone of reasonable disagreement. *Id.* If the trial court's evidentiary ruling is correct under any applicable theory of law, it will not be disturbed even if the trial court gave a wrong or insufficient reason for the ruling. *Id.*

### B. *K.N.H.'s Testimony*

In her second and third issues, appellant urges the trial court erred in overruling her objections to hearsay evidence from the State's witness. At trial, K.N.H. testified regarding what she heard during her call with one of the robbery victims.

> STATE: And so—you're on the phone with [the female customer], so you can hear kind of what she hears; is that correct?
>
> K.N.H: Yes.
>
> STATE: At some point in time, did you and [the female customer's] conversation seem to end?

K.N.H.: Yes. It—yes.

STATE: Now, what I want you to do is—what's the next thing you remember hearing?

K.N.H.: The—it went quiet, and I could hear a guy said—say—

DEFENSE COUNSEL: Your Honor, I'd like to object to hearsay at this point.

STATE: Your Honor, at this point, it's going to go to her state of mind.

DEFENSE COUNSEL: And—

STATE: I'm not going to offer it for the truth of the matter asserted.

DEFENSE COUNSEL: I'd like to object to Crawford at this point, Your Honor.

THE COURT: Your objection is overruled. You may proceed, Counselor.

K.N.H.: I could hear a guy say, this is a M_____ F_____ Robbery; open up the register now. So I heard [the female customer] say, is this for real? And he said, this is a M_____ F_____ robbery; open up the register now.

STATE: Okay. And at this point, what's going on through your mind?

K.N.H.: I don't know. I was like, is that the TV? I didn't know what it was. You know, I didn't know what was going on, but I just continued to listen. And I screamed, you know, her name. I kept screaming her name, but she didn't say anything.

STATE: Were you concerned at this point?

K.N.H. Yes.

. . . .

STATE: Now, at some point in time, how many voices did you end up hearing when they're no longer [the female customer's voice]?

DEFENSE COUNSEL: Your Honor, I would like to object to hearsay. And I'd like to—I'd like to put a running objection with the line of questioning from the State.

THE COURT: Make your individual objection. So, State?

STATE: Your Honor, my response is going to still be that it goes to her state of mind, and it is an ongoing emergency, based on her testimony.

THE COURT: Your objection is overruled, Counsel.

DEFENSE COUNSEL: Thank you, Your Honor.

STATE: [K.N.H], how many voices did you hear?

K.N.H.: I heard—I heard two male voices at first.

K.N.H. went on to testify the male voices were re-enacting the robbery and that she was hearing the voices of whoever had the female customer's phone at that point. She also heard a female voice that was laughing like the two male voices were and all three were discussing committing another robbery. At that time, K.N.H. was on the phone with the police, relaying what she heard because she believed the female customer had been robbed and did not know if she had been kidnapped.

Hearsay is an out-of-court statement by the declarant that is offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Rule 801 defines a statement as "a person's oral or written verbal expression, or nonverbal conduct that a person intended as a substitute verbal expression." TEX. R. EVID. 801(a).

Appellant also made *Crawford* objections in addition to his hearsay objections and on appeal argues he was denied his Sixth Amendment right of confrontation pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004). Out-of-court statements offered against the accused that are testimonial in nature are inadmissible unless the declarant is presently unavailable to testify and the accused had a prior opportunity to cross-examine. *Langham v. State*, 305 S.W.3d 568, 575 (Tex. Crim. App. 2010); *see also Crawford*, 541 U.S. at 68–69 (applying Confrontation Clause to "testimonial statements").

The first objected-to exchange is K.N.H.'s testimony regarding what she heard the robber say: "this is a M_____ F_____ Robbery; open up the register now." The State then asked K.N.H. what effect that statement had on her, to which she responded that she did not know what was going on but that she was concerned. A statement does not constitute hearsay if offered for its effect on the listener rather than for the truth of the matter asserted. *See In re Bexar Cnty. Crim.*

–8–

*Dist. Attorney's Office*, 224 S.W.3d 182, 189 (Tex. 2007). Here, the State offered the statement to establish the effect it had on K.N.H. as she listened to the call with her friend, not to establish that a robbery took place. Additionally, because the first complained-of exchange was not offered for the truth of the matter asserted, it is not barred by the Confrontation Clause. *See Crawford*, 541 U.S. at 59 n.9 ("The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.").

We overrule appellant's second issue.

The second-objected to exchange is K.N.H.'s answer to the question of how many male voices she heard. The question did not ask K.N.H. to repeat a "statement," nor did her answer include any "statement."[1] *See* TEX. R. EVID. 801(a). Accordingly, the trial court did not err in overruling appellant's hearsay or *Crawford* objection to this exchange. *See* TEX. R. EVID. 801(a); *Langham*, 305 S.W.3d at 575.

We overrule appellant's third issue.

C.     *Cross-Examination of Night Manager*

In her fourth issue, appellant contends the trial court erred in sustaining the State's objections to her proffer on cross-examination. She urges the exclusion of her proffered evidence amounted to denial of her right to confrontation.

---

[1] K.N.H.: I heard—I heard two male voices at first.

STATE: Okay. And so—and what were the male voices—what were they talking about?

K.N.H.: They were re-enacting the robbery that just occurred.

STATE: And so they're talking amongst each other?

K.N.H.: Yes.

STATE: And once, again, you have your phone, and then you have your son's phone?

K.N.H.: Yes.

STATE: And so you are talking—this is [the female customer's] phone at this point?

K.N.H.: Right.

STATE: So the voices of whoever has [the female customer's] phone are the voices you're hearing; is that correct?

K.N.H.: That's correct.

. . . .

The right of cross-examination by the accused of a testifying State's witness includes the right to impeach the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness's credibility. *Virts v. State*, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987). Like our review of a trial court's decision admitting or excluding evidence, we review the trial court's decision to limit cross-examination under an abuse of discretion standard. *Sansom v. State*, 292 S.W.3d 112, 118 (Tex. App—Houston [14th Dist.] 2008, pet. ref'd). An abuse of discretion occurs when the trial court acts without reference to any guiding rules or principles. *Id.*

A trial court may violate a defendant's right of confrontation by improperly limiting cross-examination, but the scope of appropriate cross-examination is not unlimited. *See Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). A trial court, for example, may limit the scope of cross-examination to prevent harassment, prejudice, confusion of the issues, harm to the witness, and repetitive or marginally relevant interrogation. *See id.* Notwithstanding the trial court's discretion in this area, jurors are entitled to have the benefit of the defense theory before them so that they can make an informed decision regarding the weight to accord the witness's testimony, even though they may ultimately reject the theory. *Sansom*, 292 S.W.3d at 119.

Only relevant evidence is admissible. TEX. R. EVID. 402. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without it. TEX. R. EVID. 401. To be relevant, evidence must be material and probative. *Miller v. State,* 36 S.W.3d 503, 507 (Tex. Crim. App. 2001). Evidence is material if it is shown to be addressed to the proof of a material proposition, i.e., any fact that is of consequence to the determination of the action. *Id.*

At trial, during the cross-examination of the night manager of the convenience store where the robbery occurred, the following exchange took place:

DEFENSE COUNSEL: The DA told you about a plea for [one of the robbers], right?

NIGHT MANAGER: Yes.

DEFENSE COUNSEL: And you said you agreed to the plea—

STATE: Your Honor—

DEFENSE COUNSEL:—to get—

STATE: —may we approach?

THE COURT: You may.

(Off the record bench conference.)

DEFENSE COUNSE: The DA spoke with you about a plea deal for [one of the robbers], right?

STATE: Your Honor, I'll object. Plea negotiations are not relevant.

THE COURT: I'm going to sustain the objection. I'm going to ask the jurors to disregard that last question. Ask your next question, Counselor.

Defense counsel requested to make an offer of proof, which the trial court permitted outside the presence of the jury. At that time, defense counsel explained that he wanted to introduce evidence the night manager was informed about a plea offer made to one of the robbers and that that knowledge would show bias and prejudice towards appellant. He further explained that her failure to testify about the plea offer went to her credibility. On appeal, appellant urges the trial court's decision to limit her cross-examination of the night manager resulted in a denial of her right to confrontation and prevented her from presenting the jury with evidence of the State's favorable treatment of the "juvenile co-defendant."

We note again that courts have discretion to limit the scope of cross-examination to prevent harassment, prejudice, confusion of the issues, harm to the witness, and repetitive or marginally

relevant information. *See Hammer*, 296 S.W.3d at 561 n.7. Appellant has not shown how the night manager's knowledge of the co-defendant's plea offer would show any bias or prejudice towards appellant or how her failure to testify about that knowledge went to her credibility. We conclude appellant has failed to show any abuse of discretion by the trial court in limiting her cross-examination of the night manager.

We overrule appellant's fourth issue.

### D. *K.N.H.'s 9-1-1 Call*

In her fifth issue, appellant urges the trial court erred by overruling her hearsay objection to a recording of K.N.H.'s 9-1-1 call. Before the State published the 9-1-1 call to the jury, defense counsel objected "to hearsay" and "to *Crawford*." She urges the out-of-court statements made during the 9-1-1 call were testimonial and their admission violated the Confrontation Clause.

Out-of-court statements that are "testimonial" in nature violate the Confrontation Clause unless the prosecution establishes that the out-of-court declarant is presently unavailable to testify in court and the accused had a prior opportunity to cross-examine him. *Langham*, 305 S.W.3d at 575–76.

The 9-1-1 call contains three out-of-court statements: 1) the call itself, 2) the statements of K.N.H. and the operator, and 3) the co-defendant's statements overheard and repeated by K.N.H. Appellant does not identify any specific statement as objectionable, so we will review the entire call. The only statement made by anyone other than K.N.H. or the operator is the statement, "this is a robbery," which we addressed in appellant's second issue above. Regardless of whether K.N.H.'s or the operator's statements were testimonial, they could not be objectionable because both declarants—K.N.H. and the operator—testified and were subject to cross-examination. *See Crawford*, 541 U.S. at 59 n.9 ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.").

Appellant does not set forth any arguments concerning why any statements within the 9-1-1 call were inadmissible hearsay statements.  However, even had she done so, the trial court may have reasonably determined the statements fit within the excited utterance exception to the prohibition against hearsay.  An excited utterance is a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.  TEX. R. EVID. 803(2).  In determining whether a statement is an excited utterance, the court may look at the time that elapsed between the event and the statement.  *Neal v. State*, 186 S.W.3d 690, 693 (Tex. App.—Dallas 2006, no pet.).  The critical factor in determining whether a statement is an excited utterance is whether the declarant was still dominated by the emotions, fear, excitement, or pain of the event at the time of the statement.  *Id.*

Here, the call lasts barely more than three minutes during which K.N.H. describes being on the phone with her friend when she heard someone say "this is a robbery."  K.N.H. then states her friend did not respond when she asked if she was "okay."  K.N.H. explains the call with her friend is still connected, and she does not know if her friend's car has been stolen or if her friend has been kidnapped.   After the operator tells K.N.H. her friend and her car are safe, the rest of the call is less than two minutes long, during which the operator asks for K.N.H.'s phone number, her friend's phone number, and K.N.H.'s name.  The operator then instructs K.N.H. to not end the call with her friend's phone, so the police can trace the call.  Under these circumstances, we conclude K.N.H. was still dominated by the emotions and fear for her friend at the time she made statements to the operator.  *See Neal*, 186 S.W.3d at 693.

We overrule appellant's fifth issue.

### E.      *Co-Defendant as Witness*

In her sixth issue, appellant argues the trial court erred improperly denied her right to due process and a fair trial by refusing to allow appellant to call as a witness a co-defendant who had

already disposed of his case. At trial and out of the presence of the jury, appellant attempted to call one of her co-defendants to testify. Her co-defendant C.B. was represented by counsel who asserted C.B. intended to invoke his Fifth Amendment right to refrain from self-incrimination. C.B.'s counsel stated that C.B. was "under what's called a determinate sentence[,] . . . [which] means that his sentence is to be determined by, among other things, how he performs while on probation." Appellant contends C.B. waived his Fifth Amendment right not to testify *in this case* when he pleaded guilty to the same offense because he cannot further incriminate himself, as he has already admitted his guilt.

The Sixth Amendment right to compulsory process assures the defendant of her ability to offer the testimony of witnesses, and to compel their attendance, if necessary, so that the defendant may present her version of the facts to the jury. *See* U.S. CONST. amend. VI; *Washington v. Texas*, 388 U.S. 14, 19 (1967). The State may not arbitrarily deny her the right to put on the stand a witness who was physically and mentally capable of testifying to events he had personally observed, and whose testimony would have been relevant and material to the defense." *Washington,* 388 U.S. at 23.

However, an individual's constitutional privilege against self-incrimination overrides a defendant's constitutional right to compulsory process of witnesses. *Bridge v. State,* 726 S.W.2d 558, 567 (Tex. Crim. App. 1986). Therefore, a trial court cannot compel a witness to answer unless it is perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken in asserting the privilege, and that the answer cannot possibly tend to incriminate the witness. *See Walters v. State*, 359 S.W.3d 212, 216–17 (Tex. Crim. App. 2011); *Boler v. State*, 177 S.W.3d 366, 371 (Tex. App.—Houston [1st Dist.] 2005, pet ref'd.). The court is required to make an inquiry into the reasonableness of a witness's assertion of the Fifth Amendment privilege against self-incrimination. *Walters*, 359 S.W.3d at 216. We review a trial

court's decision to uphold a witness's claim of privilege for an abuse of discretion. *See id.* at 216–17.

The record reflects that, although they were not admitted into this record, both the State and defense counsel were in possession of a copy of C.B.'s juvenile records, including his plea. The record also contains testimony that C.B. was sixteen at the time of the offense. When a juvenile is given a determinate sentence, upon the request of the Texas Juvenile Justice Department (TJJD) to transfer the juvenile to the penitentiary, the trial court is required to hold a hearing and that at that hearing, the trial court has wide latitude and discretion to consider, among other factors, "the experiences and character of the person before and after commitment to [TJJD], the nature of the penal offense that the person was found to have committed, and the manner in which the offense was committed." *See* TEX. FAM. CODE ANN. § 54.11(k); *Reese v. State*, 03-14-00409-CR, 2016 WL 806704, at *2 (Tex. App.—Austin Feb. 25, 2016, no pet.) (mem. op., not designated for publication).

The district court may have reasonably inferred that C.B. believed that any answers he provided in his testimony could implicate him in greater or different offenses than he had already implicated himself in by pleading true to the State's allegations, and that such answers might be used against him at a subsequent transfer hearing. If C.B. had testified, he would have been subject to cross-examination not only by the State but also by counsel for appellant, both of whom, the district court could have reasonably inferred, would have had an incentive to undermine C.B.'s credibility by implicating him in greater or different offenses. Moreover, appellant's defense counsel had indicated to the trial court he intended to establish appellant drove the getaway car under duress from her co-defendants thus potentially implicating him in further, serious offenses.[2]

---

[2] In fact, defense counsel's opening statement began as follows:

> This is the gun. Drive, or I'll blow your brains out. We know where your mom stays. Sit. Stand. Move. What would you do? Keysha was under duress, imminent fear.

We cannot conclude the trial court abused its discretion by upholding C.B.'s claim of privilege on this record.

We overrule appellant's sixth issue.

## III. Jury Charge

In her seventh and final issue, appellant urges the trial court erred in overruling her objection that the jury charge did not contain a defensive issue on duress. The record reflects that, at the charge conference, appellant objected to the lack of an instruction on duress based on the fact that she had intended to use co-defendant C.B. to set forth evidence of duress. The trial court overruled appellant's objection.

When reviewing a trial court's decision to deny a requested defensive instruction, we review the evidence in the light most favorable to the defendant's requested submission. *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017). Duress is, on its face, a confession-and-avoidance or "justification" type of affirmative defense. TEX. PENAL CODE ANN. § 8.05(a); *Gomez v. State*, 380 S.W.3d 830, 834 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). This is so because this justification, by definition, does not negate any element of the offense, including culpable intent; it only excuses what would otherwise constitute criminal conduct. *Gomez*, 380 S.W.3d at 834.

The confession-and-avoidance doctrine required appellant to first admit she "engaged in the proscribed conduct" by admitting to all elements of the underlying offense and then to claim that his commission of the offense was justified because of other facts. *Id.* One may not establish that an act is justified without identifying, or admitting to the commission of, the predicate act. *Id.* A defendant's failure to testify, stipulate, or otherwise proffer evidence admitting that he engaged in the proscribed conduct" prevents the defendant from benefiting from the defense of duress. *Id.*

–16–

Appellant complains she was denied the opportunity to call co-defendant C.B. as a witness to establish her defense of duress. However, she also failed to testify, stipulate, or otherwise proffer evidence admitting her commission of the underlying offense. *See id.* Accordingly, we conclude that she was not entitled to a jury instruction on the affirmative defense of duress.

We overrule appellant's seventh issue.

## CONCLUSION

We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
Tex. R. App. P. 47

170429F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KEYSHA KEYYOR TUGLER, Appellant

No. 05-17-00429-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F16-47527-N.
Opinion delivered by Justice Schenck, Justices Lang-Miers and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 12th day of July, 2018.



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

KEYSHA KEYYOR TUGLER, Appellant

No. 05-17-00430-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F16-47528-N.
Opinion delivered by Justice Schenck, Justices Lang-Miers and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 12th day of July, 2018.